SLIP OPINION

Cite as 2015 Ark. 94

# SUPREME COURT OF ARKANSAS

No. CV-14-599

| | |
|---|---|
| DUSTIN MCDANIEL, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL, and MARK MARTIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE<br><br>APPELLANTS | **Opinion Delivered** March 5, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION<br>[NO. CV-2013-4020] |
| V. | HONORABLE MARY SPENCER MCGOWAN, JUDGE |
| PAUL SPENCER and NEIL SEALY<br>APPELLEES | AFFIRMED IN PART; REVERSED IN PART. |

**ROBIN F. WYNNE, Associate Justice**

Dustin McDaniel, in his official capacity as Attorney General for the State of Arkansas, and Mark Martin, in his official capacity as Secretary of State for the State of Arkansas, appeal from orders of the Pulaski County Circuit Court declaring certain sections of Act 1413 of 2013 unconstitutional and enjoining their enforcement. As this appeal involves the interpretation or construction of the Constitution of the State of Arkansas, as well as substantial questions of law concerning the validity, construction, or interpretation of an act of the General Assembly, our jurisdiction is pursuant to Arkansas Supreme Court Rules 1-2(a)(1) and (b)(6) (2014). We affirm in part and reverse in part.

During the regular session of the 89th General Assembly of the State of Arkansas, the General Assembly passed Act 1413 of 2013. Act of Apr. 22, 2013, No. 1413, 2013 Ark. Acts

6084. The Act made numerous changes to the portions of the Arkansas Code pertaining to initiatives and referenda. Article 5, § 1, of the Arkansas Constitution, as amended by Amendment 7, reserves to the people of the State of Arkansas the right to propose legislative measures, laws, and amendments to the constitution, and to enact or reject the same at the polls, independent of the General Assembly, and sets out the procedure for doing so. The section also prohibits unwarranted restrictions, stating that

> [n]o law shall be passed to prohibit any persons or persons from giving or receiving compensation for circulating petitions, nor to prohibit the circulation of petitions, nor in any manner interfering with the freedom of the people in procuring petitions; but laws shall be enacted prohibiting and penalizing perjury, forgery, and all other felonies or other fraudulent practices, in the securing of signatures or filing of petitions.

In the legislative findings accompanying Act 1413, the General Assembly found that sponsors and paid canvassers may have an incentive to knowingly submit forged or otherwise invalid signatures in order to obtain additional time to gather signatures and submit supplemental petitions. The General Assembly also found that, absent efforts to address the issues, untrained paid canvassers would continue to obtain and submit forged or otherwise facially invalid signatures. The General Assembly further found that passage of the Act would make sponsors and canvassers more accountable to the people, facilitate the initiative process, conserve state resources, and help restore confidence and trust in the initiative process.

In October 2013, Paul Spencer and Neil Sealy filed a complaint against Secretary Martin in his official capacity, alleging that certain sections of the Act violated the Constitution of the State of Arkansas, specifically amendment 7, the right of due process, the right of equal protection, the right to petition, and the right to free speech. They also filed

a motion for preliminary injunction in which they sought to enjoin Secretary Martin from enforcing the Act. Attorney General McDaniel, acting in his official capacity, successfully moved to intervene in the action and opposed the request for an injunction.

Following a hearing, the circuit court entered an order in which it granted a temporary injunction and found that sections 3, 11, 13, 15, 18, and 21 of Act 1413 violated the state constitution. In the order, the circuit court found that the provisions would cause the citizens of the State of Arkansas to lose their ability to propose legislative measures and laws directly to the people. On April 2, 2014, the circuit court entered a judgment in favor of appellees in which it permanently enjoined Secretary Martin from enforcing the portions of the Act that it had declared unconstitutional. This appeal followed.

This court reviews a circuit court's interpretation of the constitution de novo because it is for this court to determine what a constitutional provision means. *Martin v. Kohls*, 2014 Ark. 427, at 10–11, 444 S.W.3d 844, 850. Although this court is not bound by the circuit court's decision, its interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *Id*. at 11, 444 S.W.3d. at 850.

Appellees challenged the constitutionality of certain provisions of Act 1413 of 2013. Acts of the legislature are presumed constitutional and the party challenging the statute has the burden to prove otherwise. *Archer v. Sigma Tau Gamma Alpha Epsilon, Inc.*, 2010 Ark. 8, 362 S.W.3d 303. An act will be struck down only when there is a clear incompatibility between the act and the constitution. *Tsann Kuen Enters. Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003).

SLIP OPINION

*Section 21 of Act 1413*

Section 21 of Act 1413 adds subchapter 6, titled "Paid Cavassers," to Title 7, Chapter 9 of the Arkansas Code. As our holding regarding the constitutionality of this section affects the constitutionality of provisions in several of the other disputed sections, we address it first. Section 21 prohibits a sponsor from providing money or anything of value to a canvasser unless the canvasser meets the requirements of the section. Ark. Code Ann. § 7-9-601(a)(1) (Supp. 2013). Sponsors are required to provide paid canvassers with a copy of the most recent edition of the Secretary of State's handbook on referenda and initiatives and explain Arkansas law applicable to obtaining signatures on an initiative or referendum petition to the canvasser before the canvasser can solicit signatures. Ark. Code Ann. § 7-9-601(a)(2)(A)–(B) (Supp. 2013). Sponsors must also provide a complete list of all paid canvassers' names and current residential addresses to the Secretary of State and update the list if additional paid canvassers are used. Ark. Code Ann. § 7-9-601(a)(2)(C)(i)–(ii) (Supp. 2013).

Before a paid canvasser can obtain signatures on an initiative or referendum, the canvasser must submit to the sponsor the following: (1) his or her full name and any assumed name; (2) his or her current residence address and permanent domicile address if the permanent domicile address is different from the current residential address; (3) a signed statement taken under oath or solemn affirmation that states that he or she has not pled guilty or nolo contendere to or been found guilty of a criminal offense involving a violation of the election laws, fraud, forgery, or identification theft in any state; (4) a signed statement that he or she has read and understands the Arkansas law applicable to obtaining signatures on an

4

initiative or referendum petition; (5) a signed statement that the person has been provided a copy of the most recent edition of the Secretary of State's initiatives and referenda handbook; and (6) a photograph of the person taken within ninety days of the submission of the above-required information. Ark. Code Ann. § 7-9-601(b)(1)–(6) (Supp. 2013). Sponsors are required to maintain the information for three years after the general election. Ark. Code Ann. § 7-9-601(c) (Supp. 2013). For the purposes of section 7-9-601, "paid canvasser" means a person who is paid or with whom there is an agreement to pay money or anything of value before or after a signature on an initiative or referendum petition is solicited in exchange for soliciting or obtaining a signature on a petition. Ark. Code Ann. § 7-9-601(d) (Supp. 2013).

Appellants challenged section 21 of the Act as an unwarranted restriction on the rights granted to the people in article 5, § 1 of the Constitution of the State of Arkansas. We hold that the requirements of section 21 do not act as unwarranted restrictions on the rights granted in article 5, § 1. While article 5, § 1 prohibits any law that prohibits the circulation of petitions or interferes with the freedom of the people in procuring petitions, it expressly allows laws to facilitate its operation, as well as acts to prohibit and punish fraud in obtaining signatures and filing petitions. In *Washburn v. Hall*, 225 Ark. 868, 286 S.W.2d 494 (1956), this court considered whether Act 195 of 1943, now codified at Arkansas Code Annotated section 7-9-107, which requires that the original draft of any initiative or referendum petition ordering a vote upon any amendment or act be submitted to the attorney general with a proposed legislative or ballot title and popular name before the petition can be circulated, acted as an unwarranted restriction on the rights granted in article 5, § 1. In holding that it

5

SLIP OPINION

did not, we stated,

> Obviously, the Legislature considered that in signing a referendum or initiative petition the signer should have the benefit of a popular name and ballot title that would give as much information about the proposed act as is possible to give by such means . . . This statute in no way curtails the operation of Amendment no. 7 but is in aid of the amendment and insures the giving to the signer of the petition as much information as is possible and practicable with regard to what [he or she] is being asked to sign.

*Washburn*, 225 Ark. at 871–72, 286 S.W.2d at 497.

The rationale used in *Washburn* is instructive in this case. The State clearly has an interest in ensuring that sponsors are aware of the identity of people who are being paid to solicit signatures from citizens as well as how to locate them should problems arise and to have assurance that the persons so employed are aware of the applicable laws and do not have a criminal history that calls into question their ability to interact with the public in a manner consistent with those laws. These requirements aid in the proper use of the rights granted to the people of this state. Combined with the minimal burden placed on paid canvassers and sponsors, the requirements of section 21 do not act as an unwarranted restriction on the rights of the people under article 5, § 1.

Appellees also argued below that the requirements of section 21 violated their rights to free speech, petition, and due process. Appellees' argument regarding due process stems from the lack in the Act of a definition of the terms "anything of value" as used in the section to describe who is considered to be a paid canvasser for the purposes of the section and "current residence address" as used to describe the address that must be included on the pre-circulation form to be submitted to the sponsor. A law is unconstitutionally vague if it does

not give a person of ordinary intelligence fair notice of what conduct is prohibited. *Reinert v. State*, 348 Ark. 1, 71 S.W.3d 52 (2002). To satisfy due-process requirements, there must be ascertainable standards of guilt in a statute so that a person of average intelligence does not have to guess at its meaning. *See Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998). A statute is void if it is so vague and standardless that it allows for arbitrary and discriminatory enforcement. *Craft v. City of Ft. Smith*, 335 Ark. 417, 984 S.W.2d 22 (1998).

Although the term "anything of value" is not defined, we hold that its use in section 21 passes muster for the purposes of due process. The items of value referenced in the section are things that are received *in exchange* for obtaining signatures, as opposed to items given to facilitate the effort to obtain signatures. The term employed is not so imprecise as to require a person of ordinary intelligence to guess at its meaning or to allow for arbitrary and discriminatory enforcement. Sponsors, agents, and canvassers should be able to determine whether a canvasser has or will receive money or anything of value in exchange for obtaining signatures.

Likewise, we hold that the term "current residence address" is not unconstitutionally vague. Appellees produced testimony before the circuit court that professional canvassers relocate frequently, making it unclear what their "current residence address" would be. As used in section 21, the term "current residence address" is juxtaposed with "permanent domicile address," clarifying what is meant by the use of both terms. The language used is sufficiently clear to put canvassers and sponsors on notice as to what information is required.

SLIP OPINION

The requirements of section 21 also do not violate appellees' rights to free speech. Although their complaint alleged that this section of the Act violated their right to free speech under the Arkansas Constitution, their responsive brief cites no Arkansas case law, but instead relies on United States Supreme Court precedent. While state courts are absolutely free to interpret state constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution, *Michigan v. Long*, 463 U.S. 1032 (1983), this court has not yet held that to be the case with regard to article 2, § 6 and, as none of the parties assert that it provides more protection, we see no reason to address that issue at this point.

The United States Supreme Court has recognized that the circulation of an initiative petition "involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). In *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999), the Court struck down a Colorado law requiring paid canvassers to wear badges displaying their names. In discussing how the name-badge requirement impermissibly burdened political speech by requiring canvassers to reveal their identities at the very moment of interaction with potential petitioners, the Court contrasted Colorado's requirement that canvassers submit an affidavit containing their names and addresses with the petition on the basis that it is "separated from the moment the circulator speaks." 525 U.S. at 198. Likewise, here, the requirements regarding submission of information by paid circulators does not force them to reveal their identities at the time of their exercise of free speech. In addition, there is no

8

SLIP OPINION

reason to believe that the requirements of section 21 of Act 1413 will cause fewer people to be willing to exercise their right of free speech by circulating petitions, as there is no difference under the Act between a paid canvasser's discussion of a desire for political change with registered voters during the petition process and a discussion by any other citizen. As such, this section of the Act does not violate appellees' right to free speech.

Appellees also alleged that section 21 infringed upon their right to engage in "core political speech" under article 2, § 4, of the Arkansas Constitution. Article 2, § 4 provides that

> [t]he right of the people peaceably to assemble, to consult for the common good; and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged.

As is discussed above, section 21 does not abridge appellees' rights to engage in core political speech under article 2, § 6. Section 21 likewise does not violate those rights under article 2, § 4.

Appellees argue that section 21 of the Act violates their rights to equal protection under the law. Their argument is based on their contention that the portions of the Act that treat paid canvassers differently than volunteer canvassers violate the right to equal protection contained in the Arkansas Constitution. Article 2, § 3, of the Arkansas Constitution states,

> The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity; nor exempted from any burden or duty, on account of race, color or previous condition.

The equal-protection clause permits classifications that have a rational basis and are reasonably

related to a legitimate government purpose. *Bakalekos v. Furlow*, 2011 Ark. 505, at 12, 410 S.W.3d 564, 573. Equal protection does not require that persons be dealt with identically; it requires only that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary. *Id.* If a rational basis exists, the statute or, in this case, the regulation, will withstand constitutional challenge. *Id.*

Here, there exists a rational basis for the differing treatment of paid canvassers. According to the legislative-findings portion of the Act, the General Assembly was concerned that paid canvassers, who make their livelihood gathering signatures and who often, according to the testimony before the circuit court, are paid by the signature, have an incentive to submit forged or otherwise invalid signatures. This basis for the disparate treatment, expressed in the Act itself, is sufficient to withstand appellees' equal-protection challenge.

Because section 21 of Act 1413 of 2013 is constitutional, the ruling of the circuit court to the contrary is reversed.

*Section 3 of Act 1413*

Section 3 of Act 1413, which amended Arkansas Code Annotated section 7-9-103, states that registered voters in Arkansas may sign their names and print their name, addresses, birth dates, and the date of signing on an initiative or referendum petition. Ark. Code Ann. § 7-9-103(a)(1)(A) (Supp. 2013). If a person signing a petition requires assistance due to a disability, another person may print the petitioner's name, address, birth date, and the date of signing on the petition. Ark. Code Ann. § 7-9-103(a)(1)(B)(i) (Supp. 2013). The assisting

SLIP OPINION

individual must then sign and print his or her name in the margin of the petition. Ark. Code Ann. § 7-9-103(a)(1)(B)(ii) (Supp. 2013). This section also provides that a person shall not act as a paid canvasser on a statewide initiative or referendum petition if the sponsor has not provided the information required pursuant to Arkansas Code Annotated section 7-9-601 to the Secretary of State before the person solicits signatures. Ark. Code Ann. § 7-9-103(a)(2)(B)(4) (Supp. 2013). It is also impermissible under section 3 for anyone under the age of eighteen to act as a canvasser. Ark. Code Ann. § 7-9-103(a)(2)(B)(3) (Supp. 2013).

Section 3 makes it a Class A misdemeanor to do the following if acting as a canvasser, notary, sponsor, or agent: (1) sign a name other than his or her own to a petition; (2) print a name, address, or birth date other than his or her own unless the petitioner requires assistance due to a disability, and the assisting individual signs and prints his or her name in the margin; (3) solicit or obtain a signature knowing that the person signing it is not qualified to sign; (4) knowingly pay a person any form of compensation in exchange for signing a petition; (5) accept or pay money or anything of value for obtaining signatures on a petition when the person acting as a canvasser, sponsor, or agent of a sponsor knows that the person acting as canvasser's name or address is not included on the sponsor's list; (6) as a sponsor, file a petition part knowing that the petition part contains one or more false or fraudulent signatures unless each false or fraudulent signature is clearly stricken before filing; (7) as a canvasser, knowingly makes a false statement on a petition verification form; and (8) as a

notary, knowingly fails to witness a canvasser's affidavit.[1]  Act 1413, § 3.  Section 3 also requires officials charged with verifying signatures to report suspected forgery to the appropriate law–enforcement agency.  Ark. Code Ann. § 7-9-103(d) (Supp. 2013).

Appellees allege that section 3 violates article 5, § 1 as an unwarranted restriction upon the right of petition that would interfere with the freedom of the people in procuring petitions.  Specifically, they allege that the terms "disability" and "anything of value" are undefined and unconstitutionally vague, thus violating their rights to due process.  Appellees produced testimony at the hearing on the motion for preliminary injunction that people who had been involved in the initiative and referendum process were unsure what would constitute a disability under the Act and that they were concerned that the provision of items such as food, drinks, and t-shirts to otherwise unpaid canvassers would result in their being considered to be paid canvassers under the Act. They also argued that the requirement that a petitioner write his or her name, address, and date of birth on the petition violates article 5, § 1 which they contend requires only signatures and an affidavit from the canvasser.

Although the terms "disability" and "anything of value" are not defined, their use in section 3 passes muster for the purposes of due process and the prohibition of unwarranted restrictions under article 5, § 1.  A "disability" for the purposes of section 3 is any condition that would not allow a petitioner to write the required information on the petition without assistance.  The items of value referenced in the section are things that are received *in exchange*

---

[1]This portion of section 3 is not codified in the Arkansas Code Annotated.

SLIP OPINION

for obtaining signatures. These terms are not so imprecise as to require a person of ordinary intelligence to guess at their meaning or to allow for arbitrary and discriminatory enforcement. Sponsors, agents, and canvassers should be able to determine whether someone requires assistance due to a disability or if a canvasser receives money or anything of value in exchange for obtaining signatures.

Likewise, the requirement that a petitioner include his or her printed name, address, and date of birth on the petition does not violate article 5, § 1. Article 5, § 1 requires the person who circulated the petition to verify by affidavit that the signatures were obtained in his or her presence, and that to the best of his or her knowledge or belief, each signature is genuine and each signatory is a legal voter. It further states that no other affidavit or verification shall be required to establish the genuineness of such signatures. However, the requirement of the additional petitioner information on the petition is not a verification of the genuineness of the signatures. Instead, that information assists the verifier of the signatures in determining whether the petitioner is a legal voter, as is necessary for that person's signature to count toward the required total. Article 5, § 1 allows for the passage of laws to facilitate its operation. This, in turn, assists in prohibiting fraudulent practices in the obtaining of signatures, which is an authority granted to the General Assembly. Because the requirement does not conflict with a provision of the Arkansas Constitution and falls within the power granted to the General Assembly under article 5, § 1, the requirement is constitutional.

Because section 3 of Act 1413 of 2013 is constitutional, the ruling of the circuit court to the contrary is reversed.

SLIP OPINION

*Section 11 of Act 1413*

Section 11 of Act 1413, which amended Arkansas Code Annotated section 7-9-109(a), sets out the form for the canvasser verification, including a requirement that the canvasser include his or her "current residence address." Appellees alleged that section 11's "current residence address" requirement violated their rights to due process and equal protection because the same is not required of volunteer canvassers and, per the testimony before the circuit court, many of the professional paid canvassers move frequently, making it difficult to determine what their "current residence address[es]" would be for the purposes of the Act. Regarding equal protection, as explained above in the analysis of the challenge to section 21, the General Assembly put forth a rational basis for disparate treatment between paid and volunteer canvassers, justifying having the required information in order to locate the paid canvassers after they submit their petitions. The requirement also does not violate due process, according to the same rationale used in the above discussion of the term's use in section 21 of the Act.

Because section 11 of Act 1413 of 2013 is constitutional, the ruling of the circuit court to the contrary is reversed.

*Section 13 of Act 1413*

Section 13 of Act 1413, codified at Arkansas Code Annotated section 7-9-111(a)(3), states that after the petition has been filed, a canvasser shall not circulate a petition, or collect, solicit, or obtain any additional signatures for the filed petition until the Secretary of State determines the sufficiency of the petition under this section. Appellees argued that this was

an unwarranted restriction under Article 5, § 1 and that it violated the rights to petition and liberty of speech granted in Article 2, §§ 4 and 6 of the Constitution of the State of Arkansas.

We hold that section 13 of the Act violates article 5, § 1 because it acts as an unwarranted restriction on the right to circulate a petition. The requirements of section 13 are distinguishable from those in section 21 such that the rationale utilized in *Washburn v. Hall, supra*, is neither instructive nor applicable. While the statute at issue in *Washburn* and the requirements in section 21 of Act 1413 facilitate the purposes of the Act or assist in the removal of fraud from the petition process, the requirements of section 13 do neither of those things. Appellants argue that this section places all parties utilizing the petition process on equal footing because it gives them all the same amount of time to obtain signatures. This assertion, even if taken as true, serves no reasonable purpose in either furthering the rights guaranteed in article 5, § 1 or assisting the people in exercising their rights to refer or initiate legislation.

Because section 13 of Act 1413 of 2013 is unconstitutional, the ruling of the circuit court as to that section is affirmed.

*Section 15 of Act 1413*

Section 15 amended Arkansas Code Annotated section 7-9-111(f) to require that petitions containing signatures from paid canvassers must be submitted with a statement identifying the paid canvassers by name. Ark. Code Ann. § 7-9-111(f)(2)(A) (Supp. 2013). The sponsor must also submit a signed statement indicating that he or she (1) provided a copy of the most recent edition of the Secretary of State's initiative and referenda handbook to each

SLIP OPINION

paid canvasser prior to the canvasser soliciting signatures and (2) explained the requirements under Arkansas law for obtaining signatures on an initiative or referendum petition to each paid canvasser prior to the canvasser obtaining signatures. Ark. Code Ann. § 7-9-111(f)(2)(B)(i)–(ii) (Supp. 2013).

Appellees objected to the new requirements of section 7-9-111(f) on equal-protection grounds. This argument lacks merit for the same reasons outlined in the discussions of sections 21 and 11 above.

Because section 15 of Act 1413 of 2013 is constitutional, the ruling of the circuit court to the contrary is reversed.

*Section 18 of Act 1413*

Section 18 of Act 1413 added section 7-9-126 to the Arkansas Code. That section, titled "Count of Signatures," requires that the official charged with verifying the signatures, upon initial filing of the petition, perform an initial count and determine whether the petition contains, on its face and before verification of the signatures of registered voters, the designated number of signatures required by the Arkansas Constitution and statutory law in order to certify the measure for the election ballot. The section further mandates that a petition part and all signatures appearing on the petition part shall not be counted for any purpose, including the initial count if (1) the petition is not an original petition, including one that is photocopies or a facsimile transmission; (2) the petition lacks the signature, printed name, and residence address of the canvasser or is signed by more than one canvasser; (3) the canvasser is a paid canvasser whose name and the information required under Arkansas Code Annotated section

7-9-601 were not submitted by the sponsor to the Secretary of State before the petitioner signed the petition; (4) the canvasser verification is not notarized, is notarized by more than one notary, or lacks a notary signature or notary seal; (5) the canvasser verification is dated earlier than the date on which a petitioner signed the petition; (6) the petition fails to comply with Arkansas Code Annotated sections 7-9-104 or 7-9-105, including the lack of the exact popular name or ballot title approved by the Attorney General for a statewide initiative, a discrepancy in the text of the initiated or referred measure, or the lack of an enacting clause in a statewide petition for an initiated act; (7) the petition part of a statewide petition clearly and unmistakably contains signatures of more than one county unless each signature of a petitioner from another county is clearly stricken before the filing of the petition with the Secretary of State; or (8) the petition part has a material defect that, on its face, renders the petition part invalid. Ark. Code Ann. § 7-9-126(b)(1)–(8) (Supp. 2013).

Under section 18, the following signatures are not to be counted for any purpose, including the initial count of signatures: (1) a signature that is not an original signature; (2) a signature that is obviously not that of the purported petitioner; (3) a signature that is illegible and is accompanied by no personally identifying information; (4) a signature for which the corresponding printed name, address, or birth date is written by someone other than the signer except under circumstances of a disability of a signer; and (5) a signature that has any other material defect that, on its face, renders the signature invalid. Ark. Code Ann. § 7-9-126(c)(1)–(5) (Supp. 2013). Also, if the initial count of signatures is less than the designated number of signatures required by the Arkansas Constitution and statutory law, the official

charged with verifying the signatures shall declare the petition insufficient and shall not accept or file any additional signatures to cure the insufficiency. Ark. Code Ann. § 7-9-126(d) (Supp. 2013).

Appellees contended below that section 18 constitutes an unwarranted restriction and violated the rights to due process, free speech, and petition. As noted previously, the General Assembly has the right under article 5, § 1 to enact laws to prohibit and penalize fraud in the securing of signatures or the filing of petitions. Arkansas Code Annotated section 7-9-126(b)(1)−(6) and (8) fall within that authority. However, section 7-9-126(b)(7) does not. That section provides that every signature on a petition part is invalidated if the part contains signatures of more than one county. This court has held that, in situations involving the validity of individual signatures, where there is no evidence of improper motives on the part of the canvasser(s), only those individual signatures are called into question, not the entire petition part. *Sturdy v. Hall*, 204 Ark. 785, 791, 164 S.W.2d 884, 887 (1942) ("If there was no willful violation of the law by those who circulated the petitions, then it cannot be said that an occasional duplication of names nullifies the entire sheet upon which a long list of electors had in good faith petitioned for submission of the question at issue.") Section 7-9-126(b)(7), in invalidating an entire petition part for issues with individual signatures, goes beyond the power granted to the General Assembly in article 5, § 1.

Regarding Arkansas Code Annotated section 7-9-126(d), this Court has previously held that a sponsor was not entitled to a grace period where the petition, on its face, did not include enough signatures. *Dixon v. Hall*, 210 Ark. 891, 198 S.W.2d 1002 (1946). As section 7-9-

126(d) is in line with this precedent, that subsection is constitutional.

Appellees' challenge on due-process grounds is based on the use of the term "anything of value" in the sections definition of "paid canvasser" as well as the use of the term "material defect." As discussed above, the use of the term "anything of value" is not unconstitutionally vague. Also, the use of the term "material defect" is not unconstitutionally vague, as it is consistent with the Secretary of State's authority under article 5, § 1 to determine the sufficiency of petitions subject to review by this court.

The alleged violations of free speech and right to petition are the same arguments that were made and rejected with regard to other sections of the Act. For the reasons discussed in preceding portions of this opinion, section 18 does not violate appellees' rights to free speech and petition.

Because subsection (b)(7) of section 18 of Act 1413 of 2013, codified at Arkansas Code Annotated section 7-9-126(b)(7), is unconstitutional, the circuit court's finding as to that subsection is affirmed. The circuit court's findings as to the remainder of section 18 are reversed.

Affirmed in part; reversed in part.

HANNAH, C.J., and WOOD, J., concur in part and dissent in part.

BAKER, GOODSON, and HART, JJ., concur in part and dissent in part.

**RHONDA K. WOOD, Justice, concurring in part and dissenting in part.** Because I would uphold all of Act 1413 as constitutional, I would reverse the circuit court's order in its entirety. Thus, I concur with those parts of the majority's opinion regarding sections 3, 11,

15, and 21 of Act 1413. I also concur with the balance of the majority's holding regarding section 18. But I dissent from its holding on subsection (b)(7) of section 18 and its holding on section 13. These two provisions—the two-county signature prohibition and the petition-gathering dead period—are consistent with the General Assembly's duty under article 5, section 1, of the Arkansas Constitution to prevent fraudulent petition-gathering practices.

The General Assembly shall enact laws "prohibiting and penalizing perjury, forgery, and all other felonies or fraudulent practices, in the securing of signatures and filing of petitions." Ark. Const. art. 5, § 1. This is a broad mandate, and combined with the deference this court must give to laws passed by the General Assembly, the challengers to Act 1413 must meet a high bar before they can overcome the Act's presumptive constitutionality. It is well settled that there is a presumption of validity attending every consideration of a statute's constitutionality. *Cato v. Craighead Cnty. Cir. Ct.*, 2009 Ark. 334, 322 S.W.3d 484. Before an act will be held unconstitutional, the incompatibility between it and the constitution must be clear. *Id.* Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality. *Id.* The heavy burden of demonstrating the unconstitutionality is upon the one attacking it. *Id.* When possible, we will construe a statute so that it is constitutional. *Id.* Applying these principles to the two-county signature prohibition and petition-gathering dead period, I find that these two provisions pass constitutional muster.

Subsection (b)(7) of section 18 provides that "[a] petition part and all signatures appearing on the petition part shall not be counted . . . if . . . the petition part . . . clearly and unmistakably contains signatures of petitioners from more than one (1) county." Ark. Code

Ann. § 7-9-126(b)(7) ("two-county signature prohibition"). The two-county signature prohibition is in line with the rule announced in *Sturdy v. Hall*, 204 Ark. 785, 164 S.W.2d 884 (1942). In *Sturdy*, at least some of the over 10,000 signatures submitted on a petition were forged. A challenge was raised, which asserted that any petition part that included a forged signature should not be counted. We rejected this argument and held that if the forged signatures "were not done with the wrongful intent and with connivance between the [petitioner] and the circulator, we think only the particular name wrongfully signed should be stricken and not all the names appearing on that petition." *Id*. at 791, 164 S.W.2d at 887.

The majority mistakenly uses *Sturdy* to strike the two-county signature prohibition; instead, this provision survives under *Sturdy* because, in this Act, the sponsors have the ability to cure the defect. The Act provides that a petition part with signatures from petitioners living in more than one county shall not be counted "unless each signature of a petitioner from another county is clearly stricken before the filing of the petition." Ark. Code Ann. § 7-9-126(b)(7). Thus, an entire petition part would be invalid not because a petitioner signed the wrong sheet—it would be invalid because the sponsor submitted a petition part without striking signatures from other counties. This provision is no different from other provisions in the same section.

For example, section 18 also has provisions (which the majority has upheld) prohibiting the counting of petition parts if the petition part is not signed by the canvasser, if the canvasser is paid and is not registered with the Secretary of State, or if the canvasser fails to properly notarize the verification. Ark. Code Ann. § 7-9-126(b)(2)–(4). If any of these situations occur,

then a petitioner's otherwise valid signature will not be counted. But just like the two-county signature prohibition, the reason the valid signature will not be counted is the sponsor's or canvasser's failure to comply with the law. In short, there is no constitutional difference among section 18's various provisions regulating the counting of signatures, and it is inconsistent for the majority to treat these provisions differently.

I also fail to see any constitutional defect in section 13. This provision provides that after the petition has been filed, a canvasser shall not circulate a petition, or collect, solicit, or obtain any additional signatures for the filed petition until the Secretary of State determines the sufficiency of the petition. Ark. Code Ann. § 7-9-111(a)(3) ("petition-gathering dead period"). The rationale for this provision is to ensure that each petition drive has an equal amount of time—thirty days—to cure any signature shortfall. If canvassers were able to gather signatures while the Secretary makes an initial count, the amount of time to gather signatures after submission would vary depending on how long it took the Secretary to determine the petition's initial sufficiency. The majority rejects this rationale, holding that the provision "serves no reasonable purpose in either furthering the rights guaranteed in article 5, § 1 or assisting the people in exercising their rights to refer or initiate legislation." This response, however, answers the wrong question.

The right question is whether this provision is consistent with article 5, § 1's mandate to the General Assembly to enact laws "prohibiting . . . fraudulent practices." If the Secretary were able to modify the cure period on his or her own, the integrity of the petition-gathering process would be threatened. For example, the Secretary could take longer to count petitions

on causes he or she was in favor of. These petitions would therefore have thirty days, plus however long the Secretary took to determine the petition's initial sufficiency, to cure any signature shortfall. Conversely, the Secretary could quickly count petitions he or she disagrees with, compressing the cure time for these disfavored petitions. But by making the cure period consistent, the General Assembly has ensured that the Secretary will treat all petitions equally. Moreover, without the petition-gathering dead period, a sponsor who is running short of time would be encouraged to deliberately include fraudulent petition parts in order to lengthen the time it would take the Secretary to determine the number of valid signatures, thus expanding the amount of time the sponsor would have to continue collecting signatures.

A fraudulent act is defined as "conduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude." *Black's Law Dictionary* 777 (10th ed. 2014). By preventing the Secretary from acting in bad faith and discouraging sponsors from fraudulently increasing their petition's signatures, the petition-gathering dead period is entirely consistent with article 5, § 1's charge to the General Assembly to pass laws preventing fraudulent practices.

For these reasons, I would hold that all of Act 1413 is constitutional.

HANNAH, C.J., joins.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.** The citizens of the State of Arkansas are guaranteed fundamental rights to petition for initiatives and referendums. Through amendment 7 of the Arkansas Constitution, the people of our state have reserved to themselves the power to directly participate in the legislative process by "propos[ing] legislative measures, laws, and amendments to the Constitution." Ark.

Const. amend. 7. Amendment 7 "permits the exercise of the power reserved to the people to control, to some extent at least, the policies" of the state, counties, and municipalities through the petition process. *Reeves v. Smith*, 190 Ark. 213, 215, 78 S.W.2d 72, 73 (1935). Through the explicit text of the amendment, the Arkansas Constitution is clear that the General Assembly may not restrict, hamper, or impair these rights. Because Act 1413 impermissibly interferes with the initiative and referendum processes that amendment 7 so jealously guards, I believe it is unconstitutional in its entirety. Accordingly, I must dissent, in part, from the majority's decision.

The Arkansas Constitution provides that the rights to initiative and referendum are of paramount importance to the people of Arkansas, identifying them respectively as the first and second powers "reserved by the people." Ark. Const. amend. 7. Amendment 7 contains express language prohibiting the General Assembly from passing any law "in any manner interfering with the freedom of the people in procuring petitions." *Id*. The amendment further provides, "No legislation shall be enacted to restrict, hamper or impair the exercise of the rights herein reserved to the people." *Id*. Beyond doubt, the power retained by the citizens to initiative and referendum are fundamental rights guaranteed by the constitution. When a statute impinges on a fundamental right, strict scrutiny applies, and it cannot survive unless "a compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out [the] state interest." *Jegley v. Picado*, 349 Ark. 600, 632, 80 S.W.3d 332, 350 (2002); *see also Martin v. Kohls*, 2014 Ark. 427, 444 S.W.3d 844 (right to vote); *Paschal v. State*, 2012 Ark. 127, 388 S.W.3d 429 (right to privacy); *Linder v. Linder*, 348 Ark. 322, 72

S.W.3d 841 (2002) (right to parent); *Griffen v. Ark. Judicial Discipline & Disability Comm'n*, 355 Ark. 38, 130 S.W.3d 524 (2003) (right to free speech); *Lake View Sch. Dist. No. 25 of Phillips Cnty. v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002) (right to an adequate education); *Bennett v. Nat'l Ass'n for Advancement of Colored People*, 236 Ark. 750, 370 S.W.2d 79 (1963) (right to association and access to the courts). Amendment 7 does provide that the legislature has an interest in enacting laws to facilitate the operation of the amendment and to prohibit and penalize perjury, forgery, and fraudulent practices. However, Act 1413 abuses and exceeds this restricted grant of power.

The majority has determined that section 13 and parts of section 18 are unconstitutional, and I agree with that analysis; however, even assuming that the remaining provisions of the Act could withstand examination individually, the cumulative effect of the Act is more than the constitution will bear. Under a strict-scrutiny analysis, the State must show a compelling governmental interest that the Act is narrowly tailored to meet. *Griffen, supra.* While I agree that prohibiting fraud is a compelling governmental interest, Act 1413 goes too far; it is not narrowly tailored to meet that goal. As a result, it fails under strict scrutiny.

In examining whether the Act is narrowly tailored, we must consider the undisputed testimony concerning the wide reach of the Act. The testimony before the circuit court was that Act 1413 imposed arduous requirements to the procedures applicable to circulating and filing petitions for initiatives and referendums. Even assuming that any one of these requirements, standing alone, could pass constitutional muster, the cumulative result of the

extensive changes to the initiative and referendum process is to deter Arkansans from exercising their fundamental rights under amendment 7. For example, the Act clearly invokes criminal liability for sponsors and canvassers who fail to comply with its edicts, but yet muddles its provisions with ambiguous terms, making it difficult or impossible to determine whether one is engaging in illegal conduct. We have held that a statute is unconstitutional when it discourages the exercise of a fundamental right by imposing criminal liability through the use of vague and unspecified terms. *Neal v. Still*, 248 Ark. 1132, 455 S.W.2d 921 (1970). In this case, the plaintiffs testified to precisely such a result from Act 1413 when they stated that the threat of criminal liability on sponsors and paid canvassers throughout Act 1413 was daunting and imposed a chilling effect on their desire to mount campaigns for initiatives and referenda. Additionally, the undisputed testimony before the circuit court was that the Act added insurmountable obstacles in the counting and discarding of signatures collected for petitions and the prohibition on collecting signatures following the petition's initial submission to the Secretary of State. Accordingly, after reviewing the testimony at trial, the circuit court properly concluded that "the effects of Act 1413 are crushing to the citizens who wish to bring their issues directly to the people."

The majority opinion does not acknowledge the factual testimony regarding the cumulative effect of the Act on the powers of initiative and referendum but rather limits its discussion to the individual parts of the Act in seclusion. In my view, the strict language of amendment 7 requires more than a piecemeal analysis to ensure that the General Assembly has not enacted a law that will restrict, hamper, or impair the exercise of the rights of initiative and

referendum. I agree with the circuit court's finding and would hold that the totality of the Act results in an overly burdensome gauntlet whereby citizens of Arkansas are effectively denied the fundamental rights granted through amendment 7.

The majority contends that certain provisions of the Act can be upheld because the legislative purposes are to facilitate the operation of amendment 7, and to prohibit and punish fraud. While I have no quarrel with the stated legislative purposes, they are insufficient to justify Act 1413 because of the law's sweeping consequences. We have held that an Act is invalid if it has an overall unconstitutional effect, even if the legislative purpose underlying the Act is legitimate. *Ports Petroleum Inc. of Ohio v. Tucker*, 323 Ark. 680, 916 S.W.2d 749 (1996). In *Ports Petroleum*, this court examined a challenge to Act 380 of 1993, which precluded below-cost sales of motor fuel. This court held that, although the statute fell within the State's proper police power and was directed at a "laudable purpose . . . to foment competition and prevent predation by prohibiting subsidizing below-cost pricing at the retail level," the statute was nonetheless unconstitutional because it was overbroad in its reach. *Id.* at 680, 916 S.W.2d at 755. Similarly, in the instant case, it is of no consequence that the General Assembly purported to act pursuant to its limited powers under amendment 7 because Act 1413 is overbroad and impairs the rights of the people to initiative and referendum far beyond what is necessary to achieve those purposes.

In short, while Act 1413 does not eliminate the rights to initiative and referendum outright, the effect of its pervasive changes to the petition process will beget such a result—it

is death by a thousand cuts. Accordingly, I would hold that Act 1413 is unconstitutional in its entirety.

BAKER and GOODSON, JJ., join in this concurrence.

*Dustin McDaniel*, Att'y Gen., by: *Patrick E. Hollingsworth*, Ass't Att'y Gen., for appellants.

*Bettina E. Brownstein Law Firm*, by: *Bettina E. Brownstein*; and *David A. Couch, PLLC*, by: *David A. Couch*, for appellees.