SHAWN A. WOMACK, Associate Justice
Randy Zook, petitioner, challenges the sufficiency of the signatures certified by the respondent, the Honorable Mark Martin, Arkansas Secretary of State, in the statewide initiative ballot petition entitled "Arkansas Term Limits Amendment," which is on the November 6, 2018 ballot. The intervenor, Arkansas Term Limits, sponsored the petition. This court addresses the second issue raised in the original action, the sufficiency of the collected signatures. We conclude that the special master was correct in his finding that there were insufficient signatures to keep the *389 amendment on the ballot; we therefore grant the petition.
On July 6, 2018, the sponsor submitted 135,590 signatures to the secretary of state. On August 3, 2018, the secretary of state certified that the sponsor had met the requirements under the Arkansas Constitution to be placed on the ballot. The secretary determined that there were no more than 93,998 valid signatures and that 84,859 signatures was the minimum required to be placed on the ballot.
On September 5, 2018, the petitioner filed an original action in this court against the secretary of state, challenging the sufficiency of the popular name and ballot title as well as the sufficiency of the signatures collected. The petitioner additionally moved to bifurcate the proceedings and to have a special master appointed. On September 6, the intervenor filed a motion to intervene in the action. On September 7, we granted the motion to intervene, bifurcated the proceedings, and appointed the Honorable Mark Hewitt as a special master according to Arkansas Supreme Court Rule 6-5(c) (2017) to address the sufficiency of the collected signatures.
The special master held hearings on September 16, 17, and 20th, and entered his written findings on September 24th; he concluded that the intervenor had failed to provide sufficient signatures for the ballot. That same date, the intervenor filed a letter notifying the special master that he had double-counted multiple petition parts that had been excluded for multiple reasons. On September 25th, the special master filed his amended findings of fact and ultimately concluded that the respondent had erroneously included 14,806 signatures in the valid and final count. He therefore determined that there were insufficient signatures for the proposed amendment to remain on the ballot.
I. Standard of Review
Amendment 7 states that "[t]he sufficiency of all state-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." Ark. Const. art. 5, § 1, amended by Ark. Const. amend. 7. Regarding the special master's findings, our standard of review is that we will accept the master's findings of fact unless they are clearly erroneous. Benca v. Martin , 2016 Ark. 359, at 3, 500 S.W.3d 742, 744 ; Ark. R. Civ. P. 53(e) (2017). A finding of fact is clearly erroneous, even if there is evidence to support it, when, based on the entire evidence, the court is left with the definite and firm conviction that the master has made a mistake. Roberts v. Priest , 334 Ark. 503, 511, 975 S.W.2d 850, 853 (1998). We review issues of statutory interpretation de novo, as it is for this court to decide the meaning of a statute. State v. Ledwell , 2017 Ark. 252, at 4, 526 S.W.3d 1, 3. Additionally, when interpreting a statute, we construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Benca , 2016 Ark. 359, at 3, 500 S.W.3d at 745. We construe statutes so that, if possible, every word is given meaning and effect. Id.
II. False Affidavits
We first review the special master's findings that 4,371 signatures should be excluded because the canvassers attached false affidavits to the relevant petition parts. The special master noted that the relevant petition parts had the following affidavits attached:
I did not have in mind at the time I executed my Affidavit, but am now informed, that under Arkansas law, my "current residence address" is the place *390 I am staying at the time I swear out my Affidavits, which may be a distinct location from my permanent address.
The affidavits referred to in the statement above are the sworn signatures that the canvassers must provide on the individual petition parts. See Ark. Code Ann. § 7-9-108(b) (Repl. 2018). The sworn signature section also has a space for the canvasser to place his or her residence address on the petition. The special master noted that the canvassers had executed other documents, sworn statements, and signature cards demonstrating that they understood the difference between their domicile address and their current residence address. He concluded that the later affidavits stating they did not understand the law were false and that the failure to list their true current residence address on the petition renders those signatures invalid.
In Arkansas, a canvasser is required to sign the petition parts and state that "the canvasser's current residence address appearing on the verification is correct, that all signatures appearing on the petition part were made in the presence of the affiant, and that to the best of the affiant's knowledge and belief each signature is genuine and each person signing is a registered voter." Ark. Code Ann. § 7-9-108(b). The signatures in a petition shall not be counted if "[t]he petition lacks the signature, printed name, and residence address of the canvasser." Ark. Code Ann. § 7-9-126 (b)(2) (Repl. 2018).
In Benca v. Martin , the petitioner challenged signatures obtained by the sponsor where the canvasser (1) listed a post office box as his residence address, (2) listed a business as the residence address, or (3) failed to include a residence address on the petition parts. 2016 Ark. 359, at 11, 500 S.W.3d 742, 749. We held that if a petition fails to meet the requirements of section 7-9-126, the petition shall not be counted. Benca , 2016 Ark. 359, at 12, 500 S.W.3d at 750 ; Ark. Code Ann. § 7-9-126. We specifically noted that the term "shall" is mandatory and the clerical-error exception or substantial compliance cannot be used as a substitute for fulfillment with the statute. Benca , 2016 Ark. 359, at 12-13, 500 S.W.3d at 750.
Here, the special master's findings are not clearly erroneous. The special master used Larry Bradshaw as an example and noted that the sponsor registered him with a Bentonville address with the secretary of state. However, on the petition parts he collected, Bradshaw signed an affidavit that his current resident address is in Florida. He executed documents that he understood Arkansas law. Bradshaw executed his sworn-canvasser statement on June 8, 2018, and listed Florida as his current residence. On that same date, the intervenor registered Bradshaw with the secretary of state using a Bentonville, Arkansas, current residence address. The two residential addresses are in direct conflict. Further, Bradshaw later executed a sworn affidavit that the affidavit on the petition parts he collected was false as to his current residence address. The special master's findings were therefore not clearly erroneous, and he correctly excluded 4,371 signatures.
III. Failure to Obtain Sworn-Canvasser Statements
Next, we review the special master's findings that the signatures collected by Courtney McDuffie and Jennifer Norwood should be excluded because they failed to execute a sworn statement before collecting signatures as paid canvassers. The special master noted that both women were registered with the secretary of state as paid canvassers on September 12, 2017. However, McDuffie did not execute a *391 sworn-canvasser statement until July 2, 2018. The special master noted that a sponsor is required to obtain a criminal-background check within thirty days of the paid canvasser's collecting signatures. Because McDuffie did not execute her sworn statement until almost a year after she was registered with the secretary of state, any background check performed fell well outside the thirty-day statutory period. Likewise, the special master concluded that the signatures collected by Norwood were erroneously counted because she did not execute a sworn statement as required by Ark. Code Ann. § 7-9-601.
Section 7-9-601(d)(3) specifically states:
(d) Before obtaining a signature on an initiative or referendum petition as a paid canvasser, the prospective canvasser shall submit in person or by mail to the sponsor:
...
(3) A signed statement taken under oath or solemn affirmation stating that the person has not pleaded guilty or nolo contendere to or been found guilty of a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft in any state of the United States, the District of Columbia, Puerto Rico, Guam, or any other United States protectorate.
Ark. Code Ann. § 7-9-601(d)(3). Subsection 601(b) delineates the background check the sponsor must obtain before a paid canvasser collects signatures:
(b)(1) To verify that there are no criminal offenses on record, a sponsor shall obtain, at its cost, from the Department of Arkansas State Police, a current state and federal criminal record search on every paid canvasser to be registered with the Secretary of State.
(2) The criminal record search shall be obtained within thirty (30) days before the date that the paid canvasser begins collecting signatures.
(3) Upon submission of its list of paid canvassers to the Secretary of State, the sponsor shall certify to the Secretary of State that each paid canvasser in its employ has passed a criminal background check in accordance with this section.
....
(5) Signatures incorrectly obtained or submitted under this section shall not be counted by the Secretary of State.
Ark. Code Ann. § 7-9-601(b). Furthermore, subsection (c) defines a paid canvasser as "a person who is paid or with whom there is an agreement to pay money or anything of value before or after a signature on an initiative or referendum petition is solicited in exchange for soliciting or obtaining a signature on a petition." Ark. Code Ann. § 7-9-601(c). In Benca , this court noted that a paid canvasser must be designated before the canvasser collects any signatures. Benca , 2016 Ark. 359, at 10-11, 500 S.W.3d at 749. Therefore, once the designation has been made, the sponsor must comply with the statute to obtain valid signatures. Id.
The intervenor argues that the sworn statements are not required to be submitted to the secretary of state. See Ark. Code Ann. § 7-9-601. Therefore, the secretary of state cannot be faulted for failing to invalidate signatures based on information it was not required to collect. Further, the intervenor argues that there is no specific statutory provision that allows the master to invalidate the signatures for failing to obtain a sworn statement.
The intervenor is correct that section 7-9-601(d) does not state that a failure to obtain a sworn statement will result in the signatures not being counted. However, if we were to accept the intervenor's argument, *392 it would mean that the term "shall" in section 7-9-601(d) would become permissive. As a practical matter, that would leave no remedy for the canvasser's failure to comply with section 7-9-601. To interpret the word "shall" as permissive would lead to an absurd result, which this court will not do. See Benca , 2016 Ark. 359, at 7-8, 500 S.W.3d at 748.
Here, the special master's findings were not clearly erroneous. Section 7-6-601(d) specifically states that a prospective canvasser must execute a sworn statement before obtaining a signature as a paid canvasser. Once the requirement has been met, a prospective canvasser may be considered a paid canvasser, and the sponsor is then required to obtain a background check within thirty days before the canvasser begins to collect signatures. The special master noted that the sworn statements were executed well after the background checks had been performed and the canvassers certified to the secretary of state. Therefore, the special master's conclusion that the 1,988 signatures should be excluded was not clearly erroneous.
IV. Failure to Submit Timely Canvasser Lists
Next, we review the special master's findings that 3,088 signatures should be excluded because the intervenor failed to provide a list of paid canvassers to the secretary of state. A sponsor is required to provide a list of all paid canvassers' names and residential addresses to the secretary of state before signatures are collected by a paid canvasser. Ark. Code Ann. § 7-9-601(a)(C)(i). Additionally, the sponsor is required to update the secretary of state's records if additional canvassers are hired to collect signatures. Ark. Code Ann. § 7-9-601(a)(C)(ii). Colleen Huthmaker sent several emails to the secretary of state on June 12-14, 2018; however, the emails did not contain any attached canvasser lists. Another email was sent on June 15 with an attached list, but the attachment was password protected and could not be accessed by the secretary of state's office. A representative notified the sponsor that they could not access the canvasser lists, and a correct list was provided on June 18th, which they were able to access. The special master concluded that the sponsor did not meet the statutory requirements and that the signatures obtained during the applicable period should be excluded.
The special master's finding is not clearly erroneous. It is undisputed that the sponsor is required to submit an updated list of paid canvassers to the secretary of state before they start collecting signatures. However, the intervenor argues that even if the first three canvasser lists were excluded, the email on June 15th should not be excluded because the email contained an attached canvasser list, and there is no dispute that it contained the required information. If we were to accept the intervenor's argument, a sponsor would satisfy the mandatory requirements of section 7-9-601 by sending a canvasser list that the secretary of state could not access or utilize. We decline to do so. Therefore, the special master correctly excluded 3,088 signatures.
V. Stipulated Convictions
Lastly, we review the special master's findings that 479 signatures should be excluded because canvasser Gregory Lee had a felony conviction. A paid canvasser may not collect signatures if he or she has a felony criminal conviction. See Ark. Code Ann. § 7-9-601. The parties both stipulated that when Lee began collecting his signatures, he had a felony conviction. The special master's exclusion of these 479 signatures was not clearly erroneous.
*393 VI. Intervenor's Cross-Claims
Next, we address the intervenor's cross-claims. Intervenor argues that the special master erred when he refused to assign error to the secretary of state's decision to cull thousands of signatures from the count. The intervenor acknowledges that the special master failed to reference five exhibits it presented during the last day of the hearings. However, we note that the intervenor filed a letter asking the master to readdress issues in his initial findings of fact. The intervenor failed to ask the master to rule on those specific exhibits. We therefore decline to address the issue. See Pritchett v. Spicer , 2017 Ark. 82, at 9, 513 S.W.3d 252, 257-58 ("The failure to obtain a ruling on an issue, even a constitutional one, precludes our review on appeal.").
Second, the intervenor argued before the special master that the secretary of state culled signatures based on a change in the voter registration date. At the hearing, Mr. Steele testified that he had created a program which compared culled signatures against data from the secretary of state to determine whether the culled voter was registered to vote in the county in which he or she signed the petition part. The special master noted that the list Mr. Steele created was unreliable because he did not account for other errors in the petition parts that resulted in the signatures not being counted.
The intervenor argues that if the special master had cross-referenced its list against the other defects the petitioner alleged, the master would have discovered that over two thousand signatures were not subject to petitioner's alleged defects. As noted above, the burden is on the moving party to obtain a ruling on an issue. Pritchett, supra. The intervenor specifically filed a petition for rehearing, styled as a letter, drawing the special master's attention to deficiencies in his first report. The intervenor did not address the special master's failure to cross-reference its list with the petitioner's challenged petition parts. Therefore, this specific argument was not presented to the special master. We therefore affirm the special master's finding on this issue.
VII. Alleged Constitutional Challenges
Lastly, we will briefly address the intervenor's constitutional challenges. First, the intervenor argues that the cumulative effect of the canvasser registration requirements violates its rights under the First Amendment and the Arkansas Constitution. Both of these challenges were addressed in McDaniel v. Spencer , 2015 Ark. 94, 457 S.W.3d at 641. There, the appellant argued that section 7-9-601 impermissibly limited its rights under article 5, section 1 of the Arkansas Constitution. However, we specifically stated:
The State clearly has an interest in ensuring that sponsors are aware of the identity of people who are being paid to solicit signatures from citizens as well as how to locate them should problems arise and to have assurance that the persons so employed are aware of the applicable laws and do not have a criminal history that calls into question their ability to interact with the public in a manner consistent with those laws. These requirements aid in the proper use of the rights granted to the people of this state. Combined with the minimal burden placed on paid canvassers and sponsors, the requirements of section 21 do not act as an unwarranted restriction on the rights of the people under article 5, § 1.
Spencer , 2015 Ark. 94, at 6, 457 S.W.3d at 648. Likewise, we rejected the argument that section 7-9-601 violated the appellee's right to free speech. Spencer , 2015 Ark. 94, at 8, 457 S.W.3d at 650.
*394 Intervenor points out that since our decision in Spencer , the General Assembly has amended the statute twice to include additional requirements--namely, that a sponsor must retain its records for three years and to submit a final list of current residential addresses of each canvasser as well as a signature card. The record-keeping provision of section 7-9-601(e) is not implicated in this case. Additionally, the final canvasser list and signature cards are not a basis for our decision in this case. We therefore do not address intervenor's assertion that these two additional requirements render the statute unconstitutional.
Second, the intervenor argues that the term "current residence address" as used in section 7-9-601 is unconstitutionally vague. However, once again, we specifically addressed this issue in Spencer and concluded that when the term "current residence address" is juxtaposed with "permanent domicile address," it is sufficiently clear to put canvassers and sponsors on notice as to what information is required. Spencer , 2015 Ark. 94, at 6, 457 S.W.3d at 649. We decline to readdress our decision here.
Lastly, the intervenor argues that the procedures in this case were fundamentally unfair and violated its due-process rights because it had only eleven days to defend the certification and the scope of review was too broad. Due process requires that, at a minimum, a person be given notice and a reasonable opportunity for a hearing before he or she is deprived of property by state action. Owings v. Econ. & Med. Servs., a Div. of Arkansas Dep't of Human Servs. , 302 Ark. 475, 478, 790 S.W.2d 438, 439 (1990). Here, there is no dispute that the intervenor obtained a hearing in front of the special master to address the contested issues. To the extent that the intervenor argues that the eleven-day window to challenge the petition was inadequate, it has not cited any specific authority stating that the time it was provided was insufficient. See Roberts v. State , 324 Ark. 68, 71, 919 S.W.2d 192, 194 (1996) ("We do not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support and it is not apparent without further research that the argument is well taken."). Finally, the intervenor argues that this court should adopt a new standard of review in our review under article 5, section 1 of the Arkansas Constitution. However, the intervenor has not presented sufficient evidence that we should overturn our prior holdings, much less that the standard we employ is unconstitutional. See Thiel v. Priest , 342 Ark. 292, 300, 28 S.W.3d 296, 300 (2000) (We will uphold our previous decision unless a great injury or injustice will result.).
VIII. Conclusion
Because the special master correctly excluded a sufficient number of signatures to prevent the issue from being presented on the ballot, we decline to address the special master's other contested findings. The mandate shall issue immediately.
Petition granted.
Baker, Hart and Wynne, JJ., dissent.
I believe that Arkansas Term Limits submitted a sufficient number of valid signatures to the secretary of state for its proposed amendment to the Arkansas Constitution to appear on the November ballot. Accordingly, I dissent.
The majority affirms the master's finding that 4,371 signatures should be excluded because they were gathered by canvassers who submitted "false" affidavits regarding their current residence address. These canvassers attached supplemental *395 affidavits to their paperwork, stating the following:
[I] did not have in mind at the time I executed my Affidavit, but am now informed, that under Arkansas law, my 'current residential address' is the place I am staying at the time I swear out my Affidavits, which may be a distinct location from my permanent out-of-state domicile.
While it is true that this court held in McDaniel v. Spencer , 2015 Ark. 94, 457 S.W.3d 641, that the term "current residence address" is not ambiguous, neither the legislature nor this court has ever defined that term. There is no evidence that the canvassers who executed the supplemental affidavits did not reasonably consider the addresses they listed on their initial affidavits to be their current residence addresses at the time those affidavits were executed. The wording of the supplemental affidavits bears this out. This contrasts sharply with the signatures excluded in Benca v. Martin , 2016 Ark. 359, 500 S.W.3d 742, in which this court held that post-office boxes could not serve as a "current residence address," as one cannot reasonably believe he or she resides in a post-office box. For the affidavits to be false, as the master found, there would have to be some evidence that the canvassers intentionally listed addresses they knew to be incorrect. There is no evidence of this kind in the record. Therefore, these signatures should not be excluded.
Next, the majority affirms the finding by the master that 1,988 signatures should be excluded because they were collected by paid canvassers before the canvassers executed the sworn statement required pursuant to Arkansas Code Annotated section 7-9-601(d)(3) (Repl. 2018). The majority admits that there is no do-not-count provision in section 7-9-601(d) as there is in section 7-9-601(b), which requires that sponsors obtain background checks on all paid canvassers before they begin collecting signatures. Ark. Code Ann. § 7-9-601(b)(1) (Repl. 2018). Nonetheless, the majority proceeds to exclude the signatures, reasoning that a failure to do so would make the word "shall" in section 7-9-601(d)(3) permissive.
In doing so, the majority completely ignores the application of the background-check provision. In McDaniel , we made it clear that the purpose of the sworn statement was to satisfy the State's interest in ensuring that paid canvassers "do not have a criminal history that calls into question their ability to interact with the public." 2015 Ark. 94, at 6, 457 S.W.3d 641, 648. When McDaniel was decided, the current background-check requirement did not exist.[1] The function previously performed by the canvasser statement is now served to a greater degree by the background-check requirement, which clearly contains a do-not-count provision. Considering the background check now required for paid canvassers, the majority's application of the sworn-statement provision in this case renders the sworn-statement provision truly an unwarranted restriction prohibited by article 5, section 1 of the Arkansas Constitution, as it is clearly no longer necessary for its intended purpose.[2]
I disagree with the master's reasoning, which is adopted by the majority, that the canvasser statement must be obtained before *396 the background check can be performed because the canvasser cannot be considered a "paid" canvasser until the information required under section 7-9-601(d) has been submitted. The definition of "paid canvasser" contained in section 7-9-601(c) makes no reference to the information required under section 7-9-601(d). Obviously, the determination of whether one is a paid or unpaid canvasser must be made before the submission of the information required under section 7-9-601(d) because if the canvasser is not paid, the information is not required. Further there is no requirement in section 7-9-601 that the statement be submitted before the background check is performed. If the legislature had intended for the information required under section 7-9-601(d) to be obtained by the sponsor before the background check could be performed, it would have said so. It did not. The canvasser statement is also obviously not a practical necessity, as Arkansas Term Limits successfully obtained background checks on canvassers who had not submitted the statement. The 1,988 signatures should not have been excluded.
Finally, the majority affirms the master's decision to exclude 3,088 signatures because they were gathered before the canvasser list was submitted to the secretary of state. I agree that the 2,221 signatures in this group collected prior to June 15 were properly excluded, because Arkansas Term Limits failed to submit the lists to the secretary of state as required. Regarding the 867 signatures collected between June 15 and June 18, I disagree with the majority that these were properly excluded. Arkansas Term Limits complied with the statute by submitting the lists. The majority reasons that, despite the compliance with the statute, including the signatures would permit sponsors to submit lists to the secretary of state that the secretary of state could not access. It would do nothing of the sort. Here, there is no indication that the lists were intentionally submitted in a password-protected document. The secretary of state was able to access the lists within a few days, and there is no indication that the secretary of state was impeded at all in the performance of his duties. Under these facts, excluding the signatures collected between June 15 and June 18 serves no purpose, and they should not have been excluded.
When the number of signatures erroneously excluded by the master is added back in to the signature count, the petition contains a sufficient number of signatures to remain on the November ballot. I would deny the petition.
Baker and Hart, JJ., join.

The background-check requirement was added by Act 1219 of 2015. Act of Apr. 7, 2015, No. 1419, 2015 Ark. Acts 5596.

I would note that, while the sponsor is required to certify to the secretary of state that the background check has been performed, no information whatsoever regarding the sworn statement is required to be given to the secretary of state.