SLIP OPINION

Cite as 2016 Ark. 359

# SUPREME COURT OF ARKANSAS

No. CV–16–785

| | | |
|---|---|---|
| KARA L. BENCA | | **Opinion Delivered** October 27, 2016 |
| | PETITIONER | |
| V. | | AN ORIGINAL ACTION |
| MARK MARTIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF THE STATE OF ARKANSAS | | |
| | RESPONDENT | |
| ARKANSANS FOR COMPASSIONATE CARE 2016 | | <u>PETITION GRANTED</u>. |
| | INTERVENOR | |

**KAREN R. BAKER, Associate Justice**

Kara L. Benca, petitioner, challenges the sufficiency of signatures counted by the respondent, the Honorable Mark Martin, Arkansas Secretary of State, in the statewide initiative ballot petition entitled "The Arkansas Medical Cannabis Act," which is on the November 8, 2016 ballot. The proposed Act is sponsored by intervenor, Arkansans for Compassionate Care 2016. Because we conclude that the total number of signatures which should have been counted by respondent falls below the statutory minimum, we grant the petition.

Article 5, section 1 of the Arkansas Constitution, incorporating amendment 7, governs both statewide and local initiatives and referendums. *See* Ark. Const. art. 5, § 1, amended by Ark. Const. amend. 7; *Mays v. Cole*, 374 Ark. 532, 289 S.W.3d 1 (2008). "Jurisdiction to

review the sufficiency of statewide initiative petitions is conferred on this court by way of amendment 7 to the Arkansas Constitution. *See Ward v. Priest*, 350 Ark. 345, 86 S.W.3d 884 (2002). Following certification by the Secretary of State, amendment 7 clearly confers original and exclusive jurisdiction upon this court to review the Secretary of State's decision as to the sufficiency of the petition." *Stephens v. Martin*, 2014 Ark. 442, at 6, 491 S.W.3d 451, 454. Here, because the Ballot Measure seeks to "propose a law," the sponsor intervenor needed valid signatures from 8 percent of the voters in the last gubernatorial general election; under amendment 7, 67,887 signatures of registered voters are required in order for the Ballot Measure to be placed on the November 8, 2016, general election ballot.

The sponsor intervenor of the measure initially submitted 117,547 signatures. Martin culled the signatures for various reasons, and ultimately validated 77,516. In challenging the sufficiency of the petition, Benca needs to invalidate more than 9,629 signatures to prevail and have the petition removed.

On September 9, 2016, we appointed the Honorable John B. Robbins as special master in this matter. The master held a hearing on September 19–20, 2016, at which he heard testimony, heard the arguments of counsel, and received evidence.

On September 27, 2016, the master entered his original and amended findings and found that 2,087 signatures were disqualified but that the remainder of the signatures could be counted. From that report, Benca presents six points asserting that the signatures accepted by respondent should not be counted because (1) the Sponsor intervenor failed to comply with Ark. Code Ann. § 7-9-111(f)(2) (Supp. 2015); (2) paid canvassers collected signatures

in violation of Ark. Code Ann. § 7-9-601; (3) petition parts lack the signature, printed name, and residence address of the canvasser; (4) signatures where the canvasser verification is dated earlier than the date on which a petitioner signed the petition; (5) the canvasser's affidavit failed to indicate whether or not the canvasser was a paid or unpaid volunteer canvasser; and (6) two canvassers failed to personally witness the signatures of individuals who signed the petition.

Moving to Benca's arguments, our standard of review is that we will accept the master's findings of fact unless they are clearly erroneous. *See Roberts v. Priest*, 334 Ark. 503, 975 S.W.2d 850 (1998). A finding of fact is clearly erroneous, even if there is evidence to support it, when, based on the entire evidence, the court is left with the definite and firm conviction that the master has made a mistake. *Id.* Further, we note the case before us asks this court to interpret Act 1413 of 2013 and Act 1219 of 2015, which amended our laws regarding the collection of signatures on initiative petitions. *See* Ark. Code Ann. §§ 7-9-101 et seq. (Repl. 2011 & Supp. 2015).[1] Accordingly, in interpreting statutes, we construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Berryhill v. Synatzske*, 2014 Ark. 169, 432 S.W.3d 637. We construe statutes so that, if possible, every word is given meaning and effect. *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002). With these standards identified, we turn to the merits of Benca's petition.

---

[1]Because all of the signatures challenged by Benca were collected after the mandate issued in *McDaniel v. Spencer*, 2015 Ark. 94, 457 S.W.3d 641, we hold that Act 1413 is applicable to this matter.

SLIP OPINION

SLIP OPINION

I & II.  *Ark. Code Ann. §§ 7-9-111(f)(2) and 7-9-601*

Benca's first two points challenge the same 8,620 signatures. Benca first asserts that the signatures should be disqualified pursuant to Ark. Code Ann. § 7-9-111(f)(2) and not counted pursuant to Ark. Code Ann. § 7-9-601.  The signatures at issue are challenged based on Benca's position that the sponsor intervenor did not comply with the "paid canvasser" requirements of the statutes.  Specifically, she argues that the signatures should be disqualified because the sponsor intervenor failed to provide canvassers with a Secretary of State handbook, failed to train canvassers in the law, failed to provide a list of canvassers to the Secretary of State, and failed to provide a state police criminal background check within 30 days of a canvasser's registration. Because Benca's first two points challenge the same signatures, and because Ark. Code Ann. § 7-9-601 is dispositive on these points, we address the points together.

With regard to the 8,620 challenged signatures, the master found as follows:

Counts I and II question the same 8,620 signatures. Count I is based upon Ark. Code Ann. Section 7-9-111(f)(2), however, that statutory requirement did not include a "do not count" penalty. Petitioner did not dispute this. I find that no signatures are disqualified under Count I.

With regard to Count II and Ark. Code Ann. § 7-9-601, the master found:

In Count II Petitioner contends that these 8,620 signatures should be disqualified for failure to timely provide "paid canvasser list" information to Respondent and meet State Police background check requirements on each paid canvasser prior to circulation. Of the 8,620 signatures at issue:

    a.    2,548 were alleged to be disqualified for failure of a State Police background check to be obtained on paid canvassers;

    b.    5,032 were alleged to be disqualified as a result of a "date conflict,"

SLIP OPINION

where the State Police background check was incorrectly dated after the date the Sponsor made a written statement to Respondent Secretary that a background check had already been done;

c.     399 signatures were allegedly collected by paid canvassers who had not been disclosed by the Sponsor to Respondent Secretary; and

d.     701 signatures were collected by paid canvassers prior to their disclosure to Respondent Secretary.

The above requirements only apply to "paid" canvassers. The proof was undisputed that most of the Sponsor's canvassers were volunteers and many of the canvassers who had been reported as "paid," as well as many who had checked that they were "paid," were only to be paid if sufficient funds were contributed to the petition drive in the future. Furthermore, it was undisputed that many of these canvassers were never in fact paid.

Petitioner has not identified which of these canvassers fall into this category.

Consequently, I cannot find how many, if any, of these 8,620 signatures should be disqualified.

Benca contends that the master erred because the record demonstrates that the sponsor intervenor did not comply with Ark. Code Ann. § 7-9-601 with regard to the 8,620 signatures and the signatures must be disqualified pursuant to Ark. Code Ann. § 7-9-111. Benca's position is dependent upon the court's interpretation and holding regarding the "paid canvasser" statute, Ark. Code Ann. § 7-9-601, and whether the petition was in compliance with those requirements. Benca contends that the 8,620 signatures should have been rejected by the Secretary of State's office for failure to comply with Ark. Code Ann. § 7-9-601 because (1) the sponsor intervenor failed to obtain a state police background check; (2) the State Police background check was incorrectly dated after the date the sponsor intervenor reported to the Secretary of State that it had been conducted; (3) signatures were collected

SLIP OPINION

by paid canvassers who had not been disclosed by the sponsor intervenor to the respondent; and (4) the signatures were collected by paid canvassers prior to this disclosure to the respondent. Therefore, we now turn to Ark. Code Ann. § 7-9-601, "Hiring and training of paid canvassers," which provides in its entirety:

> (a)(1) A person shall not provide money or anything of value to another person for obtaining signatures on a statewide initiative or referendum petition unless the person receiving the money or item of value meets the requirements of this section.
>
> (2) Before a signature is solicited by a paid canvasser the sponsor shall:
>
>> (A) Provide the paid canvasser with a copy of the most recent edition of the Secretary of State's initiatives and referenda handbook;
>>
>> (B) Explain the Arkansas law applicable to obtaining signatures on an initiative or referendum petition to the canvasser; and
>>
>> (C)(i) Provide a complete list of all paid canvassers' names and current residential addresses to the Secretary of State.
>>
>> (ii) If additional paid canvassers agree to solicit signatures on behalf of a sponsor after the complete list is provided, the sponsor shall provide an updated list of all paid canvassers' names and current residential addresses to the Secretary of State.
>
> (b)(1) To verify that there are no criminal offenses on record, a sponsor shall obtain, at its cost, from the Department of Arkansas State Police, a current state and federal criminal record search on every paid canvasser to be registered with the Secretary of State.
>
> (2) The criminal record search shall be obtained within thirty (30) days prior to the registration of the paid canvasser.
>
> (3) Upon submission of its list of paid canvassers to the Secretary of State, the sponsor shall certify to the Secretary of State that each paid canvasser in its employ has passed a criminal background search in accordance with this section.
>
> (4) A willful violation of this section by a sponsor or paid canvasser constitutes a Class A misdemeanor.

(5) Signatures incorrectly obtained or submitted under this section shall not be counted by the Secretary of State.

(c) As used in this section, "paid canvasser" means a person who is paid or with whom there is an agreement to pay money or anything of value before or after a signature on an initiative or referendum petition is solicited in exchange for soliciting or obtaining a signature on a petition.

(d) Before obtaining a signature on an initiative or referendum petition as a paid canvasser, the prospective canvasser shall submit in person or by mail to the sponsor:

(1) The full name and any assumed name of the person;

(2) The current residence address of the person and the person's permanent domicile address if the person's permanent domicile address is different from the person's current residence address;

(3) A signed statement taken under oath or solemn affirmation stating that the person has not pleaded guilty or nolo contendere to or been found guilty of a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft in any state of the United States, the District of Columbia, Puerto Rico, Guam, or any other United States protectorate;

(4) A signed statement that the person has read and understands the Arkansas law applicable to obtaining signatures on an initiative or referendum petition; and

(5) A signed statement that the person has been provided a copy of the most recent edition of the Secretary of State's initiatives and referenda handbook by the sponsor.

(e) A sponsor shall maintain the information required under this section for each paid canvasser for three (3) years after the general election.

In reviewing the statute, "the first rule of statutory construction is to apply a plain reading to the statute, construing it just as it reads, by giving the words their ordinary and usually accepted meaning in common language. *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002)." *City of Ft. Smith v. Carter*, 372 Ark. 93, 95, 270 S.W.3d 822, 824 (2008). Further, "the word 'shall' when used in a statute means

that the legislature intended mandatory compliance with the statute unless such an interpretation would lead to an absurdity. *Ark. State Highway Comm'n v. Mabry*, 229 Ark. 261, 315 S.W.2d 900 (1958)." *Loyd v. Knight*, 288 Ark. 474, 477, 706 S.W.2d 393, 395 (1986).

Here, with regard to Ark. Code Ann. § 7-9-601, Benca contends that there are two categories of problems with the criminal background checks and two categories of problems with the list of paid canvassers submitted to the Secretary of State.

First, with regard to background checks, Benca challenges 2,548 signatures that were gathered by canvassers where no state police background check was ever obtained and 5,032 where the background check was completed after the sponsor had certified that the background check had already been performed. The plain language of Ark. Code Ann. § 7-9-601 provides that the sponsor "shall obtain" a current state and federal criminal record search, and that the criminal record search "shall be obtained within thirty (30) days *prior* to the registration of the paid canvasser." Additionally, the statute provides that the background check is to be completed *before* the paid canvasser list is submitted given to the Secretary of State and requires the sponsor to "certify to the Secretary of State that each paid canvasser in its employ has passed a criminal background search in accordance with this section." Ark. Code Ann. § 7-9-601(b)(3). The statute also provides that "signatures incorrectly obtained or submitted under this section shall not be counted by the Secretary of State." Ark. Code Ann. § 7-9-601(b)(5). Accordingly, based on the plain language of the statute, the sponsor shall conduct the background checks not more than 30 days before placing the paid canvasser

8

on the list, and the sponsor shall submit the list to the Secretary of State before the paid canvasser collects any signatures. Furthermore, if the sponsor does not comply with the requirement of timely performing the background check, the statute clearly provides that those signatures collected shall not be counted. Here, based on the record before us, the signatures do not comply with the statute. Therefore, we disqualify the 7,580 signatures and exclude these signatures from the count.

Second, Benca asserts that signatures collected by paid canvassers who were not properly disclosed to the Secretary of State should be excluded. Specifically, Benca challenges 339 signatures collected by paid canvassers who were not disclosed to the Secretary of State and 701 signatures that were collected by paid canvassers before they were disclosed to the Secretary of State.

Again, applying the plain language of the statute, section 7-9-601(a)(2) provides that the requirements of the section must be met "before a signature is collected by a paid canvasser." Further, subsection (a)(2)(C) requires that the sponsor must "provide a complete list of all paid canvassers' names and current residential addresses to the Secretary of State." Additionally, section 7-9-103(a)(4) states that "a person shall not act as a paid canvasser on a statewide initiative or referendum petition if the sponsor has not provided the information required under § 7-9-601 to the Secretary of State before the person solicits signatures on a petition." Finally, Ark. Code Ann. § 7-9-601(b)(5) provides that "[s]ignatures incorrectly obtained or submitted under this section shall not be counted by the Secretary of State."

We also we note that the plain statutory language requires that the designation of

"paid canvasser" be made before the canvasser collects any signatures. Subsection (c) defines "paid canvasser" as "a person who is paid or with whom there is an agreement to pay money or anything of value before or after a signature on an initiative or referendum is solicited in exchange for soliciting or obtaining a signature on a petition." Ark. Code Ann. § 7-9-601(c). In other words, once the sponsor identifies a canvasser as paid, the sponsor must comply with the statute to obtain valid signatures. Therefore, if the canvasser is identified by the sponsor as a paid canvasser, then the requirements must be met before signatures are collected. Accordingly, because the signatures are not in compliance with the plain language of the statutes, the signatures should not have been counted, the master clearly erred, and the 8,620 signatures must be excluded.

### III. *Residence Address: Ark. Code Ann. § 7-9-126*

For her next point, Benca asserts that the master's findings regarding the canvassers' residences are erroneous. First, Benca challenges 727 signatures on petitions where the canvasser failed to identify any addresses at all. Second, Benca challenges 515 signatures on petitions where the canvasser specified a Post Office Box as a residential address. Finally, Benca challenges 2,087 signatures on petitions where the canvasser used a business address as a residential address. Benca contends that Ark. Code Ann. § 7-9-126 (b)(2) provides that if a petition part lacks the signature, printed name and residence address of the canvasser, then it is not to be counted. She contends that the master was required to follow the mandatory language of the statute and that he clearly erred when he concluded that these errors were technical or clerical. Benca asserts that the only statute with the clerical-error language is

Ark. Code Ann. § 7-9-109, which is not applicable and is the statute covering the form of verification for the canvasser's affidavit and the clerical-errors language applies to technical errors made by a clerk, notary, judge, or justice of the peace when verifying the canvasser's signature. The master disqualified a portion of the challenged signatures and allowed others in his findings:

> In Count III, Petitioner challenges:
>
> a. 515 signatures on petition parts where the canvasser used a P.O. Box for canvasser's address;
>
> b. 727 signatures where the signers failed to include a residence address; and
>
> c. 2087 signatures where the canvassers used a business address.
>
> I find that use of P.O. Box addresses as described in subparagraph a. above and failure of some of the canvassers to include a residence address as described in subparagraph b. above were mere technical or clerical errors and these signatures should not be disqualified. However, I find that the canvassers' use of business addresses causes the 2087 signatures described in subparagraph c. above to be disqualified.

The law regarding the residential address of the canvasser, Ark. Code Ann. § 7-9-108, "Circulating Petitions," provides in pertinent part:

> (b) Each part of a petition shall have attached thereto the affidavit of the canvasser to the effect that the canvasser's current residence address appearing on the verification is correct, that all signatures appearing on the petition part were made in the presence of the affiant, and that to the best of the affiant's knowledge and belief each signature is genuine and each person signing is a registered voter.

Further, Ark. Code Ann. § 7-9-126 provides in pertinent part:

> (b) A petition part and all signatures appearing on the petition part shall not be counted for any purpose by the official charged with verifying the signatures, including the initial count of signatures, if one (1) or more of the following is true:

(1) The petition is not an original petition, including without limitation a petition that is photocopied or is a facsimile transmission;

(2) The petition lacks the signature, printed name, and residence address of the canvasser or is signed by more than one (1) canvasser[.]

Here, the 3,329 signatures challenged do not contain a residential address. The statute states that the petition *shall* include the canvasser's current residence address and that failure of the petition to include the "residence address" of the canvasser results in the signatures collected by that canvasser not being counted. The master disqualified the 2,087 signatures where the canvasser used a business address rather than a residence address but found that the petitions with no address and those with a P.O. Box address were "clerical errors" and did not disqualify those signatures. We agree with the disqualification of the business addresses, but we also disqualify the P.O. Box addresses. These signatures were not in compliance with the statute because a P.O. Box is not a residence address. Further, the master clearly erred in finding that these were clerical errors. While there is a limited exception for "clerical errors" in Ark. Code Ann. § 7-9-109, it is not applicable here. That section addresses the specific form to be used for petitions: "Forms herein given are not mandatory, and if substantially followed in any petition it shall be sufficient, disregarding clerical and merely technical errors" — and is for the correction of the error in the affidavit not the residence requirement in Ark. Code Ann. § 7-9-109. Ark. Code Ann. § 7-9-108, discussed above, requires that the petition shall contain a residential address for the canvasser. Further, section 7-9-126(b) mandates that signatures on a petition "shall" not be counted if "the petition lacks the signature, printed name, and residence address of the canvasser." Accordingly, "shall"

is mandatory and the clerical error exception and substantial compliance cannot be used as a substitute for compliance with the statute. Finally, the failure to include an address at all, or to include a P.O. Box, which is not a residence, does not meet the requirement of a residence address. Thus, we disqualify the 3,329 challenged signatures in point three.

## IV. *Canvasser Verification*

For her fourth point, Benca challenges 155 signatures because the canvasser verified the petition before the voter signed it. The master found this to be a "clerical error." As discussed above, Ark. Code Ann. § 7-9-126 states that signatures shall not be counted if "the canvasser verification is dated earlier than the date on which a petitioner signed the petition." Here, the statute was not complied with; therefore, we disqualify the 155 signatures addressed in point four.

## V. *Canvasser Checked Improper Box*

For her fifth point, Benca challenges the signatures contained on certain petitions because either the canvasser failed to check a box identifying whether he or she was paid or was a volunteer, or the canvasser checked the incorrect box. Specifically, Benca challenges 2,212 signatures where the canvasser failed to check a box at all and 767 where a known paid canvasser checked the volunteer box. The master found these errors to be "clerical errors" and concluded that the petitions were substantially compliant. As discussed above, Ark. Code Ann. § 7-9-108 sets forth the information that is required in a canvasser's verification, including the canvasser's residence and an affirmation that the signatures on the petition were made in the canvasser's presence and are valid. Section 7-9-109 provides a sample

SLIP OPINION

verification that includes a place for a canvasser to check whether he or she is a paid canvasser or a volunteer, but stated in that section, sponsors and canvassers are not required to use that particular form. Additionally, Ark. Code Ann. § 7-9-109 provides that only substantial compliance is required and clerical errors are excused, stating that "[f]orms herein given are not mandatory, and if substantially followed in any petition it shall be sufficient, disregarding clerical and merely technical errors." Ark. Code Ann. § 7-9-109(b). Therefore, we agree with the master that the signatures were properly counted by respondent.

VI. *Canvassers Personally Witness Signatures*

For her final point, Benca argues that some canvassers did not actually witness the signing of petitions. Specifically, Benca challenged 2,543 signatures having been signed without being witnessed by a canvasser. The master found as follows:

> In Count VI, Petitioner alleges that signatures should be disqualified because the canvasser did not witness the registered voter signing the petition. Petitioner's evidence consisted of Joint Exhibit 7 which reflected 1603 signatures in this category, and at the hearing, an additional 940 signatures were added to this category. (Jt. Ex. 11). Petitioner's proof did not establish that 2543 signatures of registered voters were not witnessed by the canvasser. I find that Petitioner's evidence, including testimony of witnesses and the Joint Exhibits, have failed to prove her allegation and these signatures are not disqualified.

Here, Benca seems to argue that the two canvassers, Lenderman and Albrecht, lacked credibility and that the master should have disqualified the signatures. However, Benca fails to assert error in the master's report; rather, she recites what was already submitted to the master. Here, "the master heard the testimony and observed the witnesses, and was in a much superior position to determine credibility." *Gen. Transp. Equip. v. Enter. Tools*, 261 Ark. 205, 211 (1977). Therefore, we affirm the master on this point.

Based on the discussion above, pursuant to amendment 7, the sponsor intervenor was required to submit a threshold number of 67,887 signatures to place the proposed Act on the ballot. Here, we have disallowed a total of approximately 12,104 signatures, leaving approximately 65,412 valid signatures, which is approximately 2,465 less than required to satisfy our constitutional requirements. Therefore, the sponsor intervenor has failed to meet the constitutional requirements, and we grant Benca's petition.

Finally, we must note that the dissent states that

> this original action . . . raises issues of fact, and the master found that "most of the Sponsor's canvassers were volunteers and many of the canvassers . . . were only to be paid if sufficient funds were contributed to the petition drive in the future," I would hold that sections 7-9-601 and 7-9-126(b)(3)(A) pertaining to paid canvassers are wholly inapplicable to the case at bar.

This position treats this matter solely as a factual one, evades the applicable law, and is not supported by decades of precedent regarding statutory interpretation. Here, pursuant to Rule 53(e), the master made findings of fact and interpreted the laws at issue. *See* Ark. R. Civ. P. ("The master shall prepare a report upon the matters submitted to him by the order of reference, and, if required to make findings of fact *and conclusions of law*, he shall set them forth in his report.) Accordingly, in her petition, Benca challenges those findings, including the master's legal interpretation, and we must address those issues. On countless occasions, we have explained, "[I]t is for this court to decide what a statute means and we review issues of statutory construction de novo." *Baker Refrigeration Sys., Inc. v. Weiss*, 360 Ark. 388, 395, 201 S.W.3d 900, 903 (2005). Further, "[t]he mere fact that a statute may seem to be more or less unreasonable or unwise does not justify a court in annulling it, as courts do not sit to

15

supervise legislation. Courts do not make the law; they merely construe, apply, and interpret it." *Sw. Bell Tel. Co. v. Roberts*, 246 Ark. 864, 868, 440 S.W.2d 208, 210 (1969). Today, we have simply interpreted the laws enacted by our General Assembly—"shall" means "shall" and the Sponsor did not comply with the statutes.

Petition granted.

Mandate to issue immediately.

GOODSON, J., concurs.

BRILL, C.J., and DANIELSON, J., dissent.

**COURTNEY HUDSON GOODSON, Justice, concurring.** I agree that the petition must be granted for the reasons stated by the majority. I write separately to underscore the concerns expressed by the dissenting opinion and the concurrence that I joined in *McDaniel v. Spencer*, 2015 Ark. 94, 457 S.W.3d 641. As forewarned in *Spencer*, this case illustrates that the General Assembly has made it unduly difficult for measures to be placed on the ballot.

In *Spencer*, it was my view then, and it remains now, that Act 1413 of 2013 impermissibly impinges on the constitutional right of our citizens to propose laws and amendments to the Arkansas Constitution. Without question, the Act imposes arduous and burdensome requirements to the procedures for circulating and filing petitions for initiatives and referenda. By erecting such obstacles, the Act imposes a chilling effect on the rights of our citizens to initiate laws.

Nonetheless, this court must abide by the legislation enacted by the General Assembly and cast out the proposed measure based entirely on the strictures of the Act. Our decision

rests on pure technicalities imposed by the Act. Otherwise, there is no allegation of fraud or that the signatures collected were not genuine.

The signature challenge here is by no means the only one of its kind in this election season. Further demonstrating the difficulty of passing muster under the Act, the opponents of two other measures mounted signature challenges alleging noncompliance with the requirements of the Act. However, the questions presented in those original actions must be decided another day because the signature aspect of those original actions was rendered moot by this court's holdings that the ballot titles for those measures were deficient. *See Ross v. Martin*, 2016 Ark. 340, ___ S.W.3d ___; *Lange v. Martin*, 2016 Ark. 337, ___ S.W.3d ___. Although other measures are on the ballot, those proposals did not garner a signature challenge.

The petition here failed to satisfy the onerous demands of the Act, even though there is no allegation that the signatures were invalid in any other way. The result is that the wishes of the citizens who signed the petition in good faith are being discarded, and the right of the people to pass judgment on the proposal in the voting booth has been lost. As proven by this decision, the Act places undue restrictions on the people's venerable right to initiate laws and amendments. Let us not forget that the first power reserved by the people is the initiative and that the second power retained by them is the referendum. Ark. Const. art. 5, § 1. I lament the result in this case; nonetheless, I honor the mandatory requirements of the Act.

**HOWARD W. BRILL, Chief Justice, dissenting.**

There is a long-standing tension in America between the ideals of direct democracy and the rule of law. In its simplest form, rule by democracy requires that the majority gets what it wants, but the rule of law requires not only respect for certain

procedures but also, as we know it today, respect for those who would oppose the majority.

Nowhere in Arkansas law does one see this tension as clearly as in our perennial disputes over ballots for initiatives proposing new statutes or constitutional amendments.[1]

This case concerns a proposed initiated act with the popular name, The Arkansas Medical Cannabis Act, or Issue No. 7, on the November 8, 2016 general-election ballot. Sponsored by the intervenor, Arkansans for Compassionate Care 2016 ("the sponsor"), this act would legalize the medical use of marijuana and establish nonprofit cannabis-care centers to be overseen by the Arkansas Department of Health. The majority holds that, contrary to the master's findings, the signatures supporting the proposed act are insufficient. I would accept the master's findings in this case and deny Benca's petition. For this reason, I respectfully dissent.

Arkansas is in the midst of the biennial season of ballot initiatives. Citizens see hundreds of thousands of dollars paid to canvassers—who receive five dollars a signature— feuding marijuana advocates, out-of-state individuals and interests seeking enshrinement in the 1874 Arkansas Constitution, undercover agents who videotape the gathering of signatures on petitions, and an assault on the English language by acts and amendments of bewildering complexity that astounds students of plain English. But these activities are the mere price to be paid for the right granted to the people by the Arkansas Constitution.

Since 1920, the people of Arkansas have had a unique power that is not granted under the federal constitution. Amendment 7 gives to the people of the State of Arkansas the power

---

[1]Steve Sheppard, *Intelligible, Honest, and Impartial Democracy: Making Laws at the Arkansas Ballot Box, or Why Jim Hannah and Ray Thornton Were Right About* May v. Daniels, 2005 Ark. L. Notes 123, 123 (footnotes omitted).

"to propose legislative measures, laws and amendments to the Constitution." *See* Ark. Const. art. 5, § 1, *amended by* Ark. Const. amend. 7. Significantly, amendment 7 provides that "[i]n the event of legal proceedings to prevent giving legal effect to any petition upon any grounds, *the burden of proof shall be upon the person or persons attacking the validity of the petition.*" (Emphasis added.)

As background, the sponsor initially submitted 117,547 signatures. In accordance with article 5, section 1 of the Arkansas Constitution, an initiative petition must contain at least 67,887 signatures of registered voters from at least fifteen counties. The Secretary of State validated 77,516 signatures. Benca challenged 17,746 signatures. If those 17,746 signatures were disqualified, then the sponsor would retain only 59,770 signatures—a number below the constitutional requirement of 67,887.

This original action filed by Benca raises issues of fact. *See, e.g., Roberts v. Priest*, 334 Ark. 244, 973 S.W.2d 797 (1998) (per curiam). Following this court's directive in *Benca v. Martin*, 2016 Ark. 301 (per curiam), the Honorable John B. Robbins, whom this court appointed as master, filed an amended "Master's Report and Findings of Fact" in which he applied the election code to the facts of the instant case. He found that Benca had proved, at best, that only 2,087 of the 77,516 signatures should be disqualified.

The duties of a master are governed by Rule 53 of the Arkansas Rules of Civil Procedure. That rule provides that this court shall accept the master's findings of fact unless they are clearly erroneous. *See Stephens v. Martin*, 2014 Ark. 442, 491 S.W.3d 451. A finding of fact is clearly erroneous, even if there is evidence to support it, when, based on the entire

evidence, the court is left with the definite and firm conviction that the master has made a mistake. *See id.*

In this case, I would accept the master's findings. Specifically, in count two, Benca argues that 8,620 signatures, which were arguably collected by paid canvassers, should have been disqualified because the sponsor failed to comply with Arkansas Code Annotated section 7-9-601. Benca contends that section 7-9-126(b)(3)(A) "mandates that none of these 8,260 signatures [should] be counted."

Section 7-9-601 pertains to the hiring and firing of paid canvassers while section 7-9-126(b)(3)(A) concerns the counting of signatures by paid canvassers. Applying section 7-9-601 to the facts, the master found as follows:

> The above requirements [of section 7-9-601] only apply to "paid" canvassers. The proof was undisputed that most of the Sponsor's canvassers were volunteers and many of the canvassers who had been reported as "paid," as well as many who had checked that they were "paid," were only to be paid if sufficient funds were contributed to the petition drive in the future. Furthermore, it was undisputed that many of these canvassers were never in fact paid. Petitioner has not identified which of these canvassers fall into this category. Consequently, I cannot find how many, if any, of these 8,620 signatures should be disqualified.

According to the master's finding, Benca failed to prove which, if any, canvassers were paid by the sponsor. This finding is supported by testimony presented at the hearing by Melissa Fults, a sponsor of the petition from Saline County:

> I do want to respond [to] one thing, where they were talking about paid and then filing as volunteers. Unlike all the other initiatives that were out there, we didn't have hundreds of thousands of dollars. So most of our people that ended up being paid canvassers were volunteers originally. And at one point, we thought we were going to get a donation. And so several said, "Yeah, put me on the list to be a paid canvasser. And when we didn't get the money, they said, "Well, I'd rather just be a volunteer anyway." . . . [S]ome of them were [paid] before they were supposed to be paid. But most of them didn't get paid like they were supposed to. And a lot of them

didn't even take the money once they were listed. . . . [The canvassers] wanted to get signed up as paid and then they realized we didn't have a lot of money. And I told them, "No. We'll pay you." Because they had been volunteers, but most of them had been volunteers since 2011. Even though we had set them up, they refused to take money and they always marked volunteer. . . . They signed up as a paid canvasser early on, when we thought we were going to get the funding back in December. And then when we didn't, they refused payment and they marked volunteer on all of them because they said they weren't going to take money. . . . Most of these people are patients themselves or they have family members that are patients. They have stood out in the heat and the cold and done everything they possibly could to do this and to do it right. And for them to care enough about this to say you've signed me up as a paid canvasser but I'm not going to take any money, to take their signatures away is horrible. I'm sorry. It's just — they did it because they cared. They didn't do it for the money. Actually, a couple of them only became paid canvassers because the people that gave us the money said that if we didn't get the people to take money for it and get payment, then we wouldn't get any more money. And if you'll look at our ethics report, a couple of them gave a huge chunk of that money back to the campaign.

Because the master found that "most of the Sponsor's canvassers were volunteers and many of the canvassers . . . were only to be paid if sufficient funds were contributed to the petition drive in the future," I would hold that sections 7-9-601 and 7-9-126(b)(3)(A) pertaining to paid canvassers are wholly inapplicable to the case at bar. Thus, given our deference to the master's findings, and given the constitutional provision expressly placing the burden of proof on the challengers, Benca failed to meet that burden of proof, pursuant to amendment 7. Accordingly, I agree with the master's finding that the 8,620 signatures challenged by Benca in count two should be counted. I would also accept the master's report in its entirety.

While the sponsor's canvassers did make some errors in the signature-gathering process, I agree with the master's findings that these errors are not a complete failure with regard to the sufficiency of the signatures on the petition. The proposed act should remain on the

ballot. The people should be permitted to vote on the initiative on November 8, and their votes should be counted.  For these reasons, I respectfully dissent.

DANIELSON, J., joins.

*Benca & Benca*, by: *Patrick J. Benca*, for petitioner.

*AJ Kelly*, Deputy Secretary of State & General Counsel and *Michael Fincher*, Associate General Counsel, for respondent.

*John Wesley Hall*, for intervenor.