Cite as 2020 Ark. 267

# SUPREME COURT OF ARKANSAS

No. CV-20-454

| | |
|---|---|
| | Opinion Delivered: August 27, 2020 |
| BONNIE MILLER, INDIVIDUALLY AND ON BEHALF OF ARKANSAS VOTERS FIRST AND OPEN PRIMARIES ARKANSAS, BALLOT QUESTION COMMITTEES<br>PETITIONERS | AN ORIGINAL ACTION |
| V. | |
| JOHN THURSTON, IN HIS CAPACITY AS ARKANSAS SECRETARY OF STATE, AND THE STATE BOARD OF ELECTION COMMISSIONERS<br>RESPONDENTS | |
| ARKANSANS FOR TRANSPARENCY, A BALLOT QUESTION COMMITTEE, AND JONELLE FULMER, INDIVIDUALLY AND ON BEHALF OF ARKANSANS FOR TRANSPARENCY<br>INTERVENORS | <u>PETITION DENIED IN PART AND DISMISSED AS MOOT IN PART; MOTIONS MOOT</u>. |

**ROBIN F. WYNNE, Associate Justice**

Petitioners Arkansas Voters First (AVF), a ballot question committee; Bonnie Miller, individually and on behalf of AVF; and Open Primaries Arkansas, a ballot question committee, filed this original action under article 5, section 1 of the Arkansas Constitution, Amendment 7 to the Arkansas Constitution, and Arkansas Supreme Court Rule 6-5. At issue are two initiative petitions proposing constitutional amendments that petitioners seek to have placed on the November 2020 general election ballot—one

regarding open primaries/rank-choice voting[1] and the other regarding redistricting.[2] The second amended consolidated original action complaint contains three counts challenging: (1) the Secretary of State John Thurston's determination that the certification language submitted under Arkansas Code Annotated section 7-9-601(b)(3) was insufficient; (2) the Secretary of State's additional grounds for disqualifying signatures for the open primaries/rank-choice voting petition; (3) the State Board of Election Commissioners' (SBEC's) decision not to certify the ballot title and popular name for the open primaries/rank-choice voting proposed amendment.[3] This court bifurcated the proceedings, referring Counts 1 and 2 to the Honorable John Fogleman, special master, and setting a separate briefing schedule for Count 3. This opinion addresses Counts 1 and 2. Because we deny Count 1 of the petition, the remainder of the petition is moot, as are all pending motions. Neither initiative petition can qualify for the November 2020 general election ballot.

---

[1]The popular name of this proposed amendment is "A Constitutional Amendment Establishing Top Four Open Primary Elections and Majority Winner General Elections with Instant Runoffs if Necessary."

[2]The popular name of this proposed amendment is "Citizens' Commission for an Independent Redistricting Commission."

[3]On August 17, 2020, petitioners filed a third amended consolidated original action petition to challenge the Secretary of State's finding, conveyed by letter dated August 11, 2020, that the redistricting amendment did not contain the requisite number of verified signatures of registered voters to qualify for a cure period. The third amended petition incorporated by reference the petitioners' prior pleadings, and Counts 1, 2, and 3 remain the same as in the second amended petition. Therefore, there is no need to order additional briefing.

I. *Background*

Pursuant to article 5, section 1 of the Arkansas Constitution, an initiative petition proposing a constitutional amendment requires the signatures of 10 percent of legal voters. In this case, the parties agree that the number of signatures needed for such a petition to be placed on the ballot is 89,151. Furthermore, for an insufficient petition to be entitled to a "cure period" to obtain more signatures, a state-wide petition must contain "valid signatures of legal voters equal to: (A) At least seventy-five percent (75%) of the number of state-wide signatures of legal voters required; and (B) At least seventy-five percent (75%) of the required number of signatures of legal voters from each of at least fifteen (15) counties of the state." Ark. Const. art. 5, § 1.

On July 6, 2020, sponsor AVF timely submitted to the Secretary of State the two initiative petitions at issue. The Secretary of State then began the two-step intake process, which involves (1) completion of an internal checklist of petition requirements and "culling" invalid signatures (what the parties sometimes refer to as "facial review") and (2) verification of signatures if a petition contains the requisite number of facially valid signatures. *See* Ark. Code Ann. § 7-9-126. Counts 1 and 2 concern the first step in the process, which precedes the verification of signatures. On July 14, 2020, the Secretary of State sent letters to a representative of AVF declaring both petitions insufficient for failure to comply with Arkansas Code Annotated section 7-9-601(b)(3), which requires the sponsor, upon submission of its list of paid canvassers, to certify that each paid canvasser in

its employ has passed a criminal background check. Here, the list of paid canvassers was accompanied by the following certification:

> In compliance with Arkansas Code Annotated § 7-9-601, please find the list of paid canvassers that will be gathering signatures on the Redistricting Commission Constitutional Amendment. On behalf of the sponsors, Arkansas Voters First, this statement and submission of names serves as certification that a statewide Arkansas State Police background check, as well as, 50-state criminal background check have been timely acquired in the 30 days before the first day the Paid canvasser begins to collect signatures as required by Act 1104 of 2017.

The certification for the open primaries/rank-choice voting amendment was identical except for identifying the amendment as "the Constitutional Amendment Establishing Top Four Open Primary Elections and Majority Winner General Elections with Instant Runoff." The Secretary of State's letters indicated that because AVF had not certified that each paid canvasser had "passed" a criminal background check, none of the signatures solicited by the paid canvassers could be counted for any purpose, citing Arkansas Code Annotated section 7-9-601(f). Section 7-9-601(f) provides that "signatures incorrectly obtained or submitted under this section [regarding hiring and training of paid canvassers] shall not be counted by the Secretary of State for any purpose."

Petitioners filed suit in this court on July 17, 2020, seeking a preliminary and permanent injunction requiring the Secretary of State to count the petitions' signatures and to provide a "cure period" of at least thirty days. Petitioners sought expedited consideration based on the August 20, 2020 deadline for the Secretary of State to certify any proposed constitutional amendments to the County Boards of Election

4

Commissioners for the November general election. This court ordered the Secretary of State to continue with the intake process, granted a provisional cure period and expedited consideration, and appointed a special master to make findings on factual issues. *Miller v. Thurston*, 2020 Ark. 262 (per curiam). Arkansans for Transparency, a ballot question committee, and Jonelle Fulmer, individually and on behalf of Arkansans for Transparency, were permitted to intervene. *Id.*

On July 21, 2020, the Secretary of State issued a revised declaration-of-insufficiency letter to AVF regarding the open primaries/rank-choice voting petition. The Secretary of State listed six additional reasons for culling 10,208 signatures from the petition, leaving only 88,623 of the 89,151 signatures required on the face of the petition. On July 23, 2020, the Secretary of State issued a revised declaration-of-insufficiency letter to AVF stating that, after intake analysis had been completed, a total of 90,493 signatures were left on the face of the redistricting petition. Thus, the sole reason for the declaration of insufficiency on the redistricting petition was the certification language discussed in the initial insufficiency letter.

The special master held a hearing on July 28–31, 2020, at which he heard testimony, heard the arguments of counsel, and received evidence. On August 10, 2020, the special master filed a detailed report and findings of fact. Pertinent to Count 1 of the complaint, the master stated:

> If the Supreme Court concludes that there is only one reasonable interpretation that can be drawn from the undisputed facts in regard to the certification, then the question of the adequacy of the certification appears

to be a question of law for the Court to decide. The facts are not in dispute, but the meaning of those facts is disputed. In the event the court finds that the application of the statute to the undisputed language of the certification is subject to more than one reasonable interpretation and is a question of fact, I find that the language of the certification does not certify that the canvasser has "passed" a background check and does not comply with Arkansas law. Neither petition in question has enough facially valid signatures to require verification of signatures if the certification given in this case is inadequate. If the court concludes the certification language complies with Ark. Code Ann. Section 7-9-601(b)(7) further analysis is required[.]

Regarding Count 2, the special master found that the Secretary of State erroneously culled 586 signatures from the open primaries/rank-choice voting petition, leaving the petition with sufficient signatures on its face if the background-check certification language is determined to be adequate.

## II. *Count 1*

For Count 1, petitioners contend that the Secretary of State's decision to declare the two initiative petitions insufficient for failure to comply with the requirement of certifying that the paid canvassers had passed background checks violates Arkansas law. There is no dispute about the language used in the certification, and the issue presents a question of law for this court to decide.

The applicable statute provides in pertinent part:

(b)(1) To verify that there are no criminal offenses on record, a sponsor *shall obtain*, at the sponsor's cost, from the Division of Arkansas State Police, a current state and federal criminal record search on every paid canvasser to be registered with the Secretary of State.

(2) The criminal record search shall be obtained within thirty (30) days before the date that the paid canvasser begins collecting signatures.

6

(3) Upon submission of the sponsor's list of paid canvassers to the Secretary of State, the sponsor *shall certify* to the Secretary of State that each paid canvasser in the sponsor's employ has passed a criminal background check in accordance with this section.

(4) A willful violation of this section by a sponsor or paid canvasser constitutes a Class A misdemeanor.

Ark. Code Ann. § 7-9-601 (emphasis added). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language." *Berryhill v. Synatzske*, 2014 Ark. 169, at 4, 432 S.W.3d 637, 640.

Petitioners argue that their certification language, when viewed as a whole, certifies that its canvassers passed criminal background checks. According to petitioners, the Secretary of State's conclusion that AVF had not done so was "due to his excessive focus on the absence of the word 'passed.'" Petitioners would have this court instead focus on the words "[i]n compliance with Arkansas Code § 7-9-601" at the beginning of the certification and "as required by Act 1104 of 2017" at its conclusion. But these references to the applicable statute and its 2017 amendatory act do not constitute compliance with the statute. Under Arkansas Code Annotated section 7-9-601, a sponsor is required both to *obtain* a criminal record search on each paid canvasser and to certify to the Secretary of State that each paid canvasser *passed* the criminal background check. *See* Ark. Code Ann. § 7-9-601(b)(1), (b)(3). Simply acquiring or obtaining a background check is not sufficient under the plain language of the statute. The results of the background checks are not

7

required to be filed with the Secretary of State, and the certification is the only assurance the public receives that the paid canvassers "passed" background checks.[4]

Next, petitioners argue that Arkansas law does not require sponsors to use magic words, especially when strict compliance with the statute is impossible. Their argument that strict compliance is impossible is a red herring, however, because the impossibility of obtaining federal background checks from the Arkansas State Police, as contemplated by the statute, is not at issue. Petitioners did not certify that their paid canvassers had passed any background check—state or federal. Nor are "magic words" the issue. Petitioners could have conveyed in their certification that each paid canvasser had passed a background check without using the word "passed." The issue is whether petitioners have complied with the statutory requirements. *Benca v. Martin*, 2016 Ark. 359, 500 S.W.3d 742, is instructive. In *Benca*, this court addressed challenges to the sufficiency of signatures counted by the respondent Secretary of State in a statewide initiative ballot petition. In interpreting several requirements for canvassers, this court applied the plain language of the statutes and disqualified signatures collected by canvassers when statutory requirements

---

[4]Before obtaining a signature on an initiative or referendum petition as a paid canvasser, the prospective canvasser is required to submit to the sponsor, among other things, "[a] signed statement taken under oath or solemn affirmation stating that the person has not pleaded guilty or nolo contendere to or been found guilty of a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft in any state of the United States, the District of Columbia, Puerto Rico, Guam, or any other United States protectorate." Ark. Code Ann. § 7-9-601(d)(3). Thus, the standard for having "passed" a criminal background check appears to be having no criminal conviction for a felony offense or a violation of the election laws, fraud, forgery, or identification theft as stated in section 7-9-601(d)(3).

had not been met. For example, over 7500 signatures were excluded because they were gathered by canvassers where no state police background check was ever obtained or where the background check was completed after the sponsor had certified that the background check had already been performed. *Benca*, 2016 Ark. 359, at 8–9, 500 S.W.3d 742, 748. We concluded by stating, "Today, we have simply interpreted the laws enacted by our General Assembly—'shall' means 'shall' and the Sponsor did not comply with the statutes." *Id.* at 16, 500 S.W.3d at 752. Similarly, in *Zook v. Martin*, 2018 Ark. 306, 558 S.W.3d 385, this court excluded several sets of signatures for failure to comply with the statutory requirements regarding paid canvassers. Here, we cannot ignore the mandatory statutory language requiring certification that the paid canvassers passed criminal background checks, nor can we disregard section 7-9-601(f)'s prohibition on the Secretary of State counting incorrectly obtained signatures "for any purpose."

In sum, we hold that petitioners did not comply with Arkansas Code Annotated section 7-9-601(b)(3) when they failed to certify that their paid canvassers had passed criminal background checks. Accordingly, the initiative petitions at issue are insufficient and petitioners are not entitled to a cure period or any other relief.

### III. *Conclusion*

Because we deny Count 1 of the petition, petitioners cannot move forward with their remaining challenges to the initiative process, and any ruling on petitioners' remaining claims would be strictly advisory. Generally, this court does not issue opinions that are moot or advisory. *Ross v. Martin*, 2016 Ark. 362, at 4. Therefore, Count 2 of the

9

third amended consolidated original action petition is dismissed as moot. Additionally, all pending motions are moot.

Petition denied in part and dismissed as moot in part; motions moot.

Mandate to issue immediately.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** Today, the majority has disenfranchised more than 90,000 citizens. By signing the petition, these registered voters clearly manifested their desire to have these issues placed on the ballot. While I am not unmindful that the sponsor of an initiative is keenly interested in a proposed constitutional amendment, it is ultimately up to the qualified electors in this state to decide whether that measure is voted on. Ark. Const. art. 5, § 1. The legislative article of our constitution calls initiative "the first power reserved by the people." *Id.* Our constitution expressly prohibits laws that impinge on the right of the people to access and sign initiative petitions. It could not be more clearly stated:

> Unwarranted Restrictions Prohibited. No law shall be passed to prohibit any person or persons from giving or receiving compensation for circulating petitions, not to prohibit the circulation of petitions, nor in any manner interfering with the freedom of the people in procuring petitions; but laws shall be enacted prohibiting and penalizing perjury, forgery, and all other felonies or other fraudulent practices, in the securing of signatures or filing of petitions.

Given the express language in our constitution, to the extent that Arkansas Code Annotated section 7-9-601(b) acts to prohibit "any person" from being a paid canvasser or

interferes with the "freedom of the people in procuring petitions," it is obviously unconstitutional.

I do not mention the plain language of article 5, section 1, because we have a challenge to the constitutionality of section 7-9-601. I mention this only because in construing section 7-9-601, this court must be guided by the mandate to construe the section to be constitutional, if possible. *3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158 of Am. Legion, Dep't of Ark., Inc.*, 2018 Ark. 91, 548 S.W.3d 137. The majority has failed to follow this mandate.

In the first place, the concept of "passing" a background check is not firmly rooted in fact. A State Police background check merely shares the content of one or more databases. The State Police do not "pass" or "fail" the subject of a background check. Accordingly, certifying that a paid canvasser has "passed" a background check leaves the sponsor with the Hobson's choice of not quite truthfully claiming that a canvasser "passed" a background check, which exposes him or her to potential criminal penalties under section 7-9-601(b)(4), or the more similarly unpalatable prospect of having all the petition parts rejected. Secondly, appearing on a database as having a criminal conviction is not conclusive of the question of whether a paid canvasser committed or did not commit a criminal offense. *See, e.g.*, *Trammell v. Wright*, 2016 Ark. 147, 489 S.W.3d 636. As with any electronic database, the time-honored maxim "garbage in/garbage out" applies. Thirdly, not all criminal convictions are positively correlated with a proclivity to commit perjury,

11

forgery, or fraud. The Arkansas Rules of Evidence acknowledge this fundamental fact. *See* Ark. R. Evid. 609.

Contrary to the majority's assertion, there is no evidence that the disputed certification resulted in a single signature "incorrectly obtained or submitted." Under the Arkansas Constitution, "incorrectly obtained" can only mean as a result of "perjury, forgery, or fraud." Likewise, there is no evidence that the certification language directly affected the validity of even a single petition part. The validity of each petition part, which was evaluated by the Special Master, depends on entirely separate criteria. Accordingly, in my view, the Secretary of State improperly excluded petitions circulated by paid canvassers with the disputed certification language. I would order those signatures to be counted.

I dissent.

*Steel, Wright, Gray, PLLC*, by: *Ryan Owsley*, *Nate Steel*, *Alex Gray*, and *Alec Gaines*; and *Adam H. Butler* and *Robert F. Thompson*, for petitioners.

*Gary L. Sullivan*, Managing Attorney, for respondent John Thurston, in his official capacity as Secretary of State.

*Leslie Rutledge*, Att'y Gen., by: *Nicholas J. Bronni*, Ark. Solicitor Gen.; *Vincent M. Wagner*, Deputy Solicitor Gen.; and *Dylan L. Jacobs*, Ass't Solicitor Gen., for respondent Arkansas State Board of Election Commissioners.

*Friday, Eldredge & Clark, LLP*, by: *Elizabeth Robben Murray*, *Kevin A. Crass*, and *Kathy McCarroll*, for intervenors.