Cite as 2020 Ark. 270

# SUPREME COURT OF ARKANSAS
No. CV-20-136

| | |
|---|---|
| | Opinion Delivered: September 17, 2020 |
| ARKANSANS FOR HEALTHY EYES, A BALLOT QUESTION COMMITTEE; VICKI FARMER, INDIVIDUALLY AND ON BEHALF OF ARKANSANS FOR HEALTHY EYES<br><br>PETITIONERS | AN ORIGINAL ACTION (COUNTS II–IV) |
| V. | |
| JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF THE STATE OF ARKANSAS<br><br>RESPONDENT | PETITION GRANTED IN PART AND DISMISSED AS MOOT IN PART. |
| SAFE SURGERY ARKANSAS, A BALLOT QUESTION COMMITTEE; AND LAURIE BARBER, M.D., INDIVIDUALLY AND ON BEHALF OF SAFE SURGERY ARKANSAS<br><br>INTERVENORS | |

**JOHN DAN KEMP, Chief Justice**

Petitioners Arkansans for Healthy Eyes ("AHE"), a ballot-question committee, and

Vicki Farmer, individually and on behalf of AHE, have filed an original action pursuant to

Article 5, section 1 of the Arkansas Constitution, Amendment 7 of the Arkansas Constitution,

and Rule 6-5 of the Arkansas Supreme Court Rules against Respondent John Thurston ("the

Secretary"), in his official capacity as Secretary of State of the State of Arkansas. Petitioners

challenge the sufficiency of a statewide-initiative petition ("the petition") filed by Intervenor

Safe Surgery Arkansas ("SSA"), a ballot-question committee, to refer Act 579 of 2019 ("Act

579") to the people of Arkansas on the November 3, 2020 general-election ballot. Our jurisdiction is proper pursuant to Arkansas Supreme Court Rule 1-2(a)(3). We grant the petition in part and dismiss the remainder of the petition as moot.

I. *Facts*

In March 2019, the Arkansas General Assembly passed Act 579, and the Governor signed it into law. Act 579 expanded the scope of the practice of optometry in Arkansas to permit licensed optometrists to perform the following procedures: (1) "[i]njections, excluding intravenous or intraocular injections"; (2) "[i]ncision and curettage of a chalazion"; (3) "[r]emoval and biopsy of skin lesions with low risk of malignancy, excluding lesions involving the lid margin or nasal to the puncta"; (4) "[l]aser capsulotomy"; and (5) "[l]aser trabeculoplasty." *See* Ark. Code Ann. § 17-90-101(a)(3)(D)(i)–(v) (Supp. 2019).

On July 23, 2019, SSA timely filed with the Secretary its petition containing more than 84,000 signatures with the popular name, "An Act to Amend the Definition of 'Practice of Optometry.'" SSA had paid National Ballot Access ("NBA"), a canvasser firm, to solicit signatures for its petition. On June 12, 2019, NBA had submitted a list of paid canvassers with the following language: "I certify that the canvassers listed below have each passed a criminal background check from the Arkansas State Police within 30 days of canvassing." Those canvassers had collected 12,116 signatures that the Secretary counted as valid. Then, on June 13, a list of paid canvassers was submitted with the following certification language:

> In compliance with Ark. Code Ann. § 7-9-601, please find the list of paid canvassers that will be gathering signatures on the Safe Surgery Referendum. On behalf of the sponsor, this statement and submission of names serves as certification that the statewide Arkansas State Police background check, as well as a 50-state criminal background check, have been timely

2

acquired in the 30 days before the first day the paid canvasser begins to collect signatures as required by Act 1104 of 2017.

The canvassers certified under this language had collected 51,911 signatures that the Secretary counted as valid. The Secretary later declared the petition insufficient because it contained less than half the required number of signatures and failed to comply with the requirements set forth in Act 376 of 2019 ("Act 376").

In August 2019, SSA filed an original action in this court and sought mandamus to require the Secretary to count additional signatures on the grounds that Act 376 was not in effect on July 23, 2019, or that Act 376 was unconstitutional. We granted SSA's petition in part and held that Act 376 was not in effect on July 23, 2019, because it had a defective emergency clause. *See Safe Surgery Ark. v. Thurston*, 2019 Ark. 403, at 6–7, 591 S.W.3d 293, 297–98. We directed the Secretary to review the sufficiency of the petition, pursuant to the law as it existed before Act 376 took effect, and to proceed with reviewing the signatures. *Id.* at 7–8, 591 S.W.3d at 297–98. Afterward, the Secretary certified that the petition met the signature requirements as required by Article 5, section 1 of the Arkansas Constitution.

On February 28, 2020, petitioners filed the instant original action in this court. Specifically, they averred that the ballot title and popular name are invalid (Count I); SSA's alleged fraud invalidates the petition (Count II); SSA failed to comply with mandatory paid-canvasser and petition requirements (Count III); and SSA failed to submit the requisite number of valid signatures (Count IV). In their prayer for relief, petitioners requested that we grant their petition in full, declare the petition on Act 579 as insufficient, order respondent not to include the referendum on the general-election ballot in November 2020, and award

3

costs and other just and proper relief. We granted an unopposed motion to intervene filed on behalf of SSA and Laurie Barber, M.D., individually and on behalf of SSA; bifurcated the issues; and set a briefing schedule.

On April 2, 2020, we appointed the Honorable Mark Hewett as special master to conduct a hearing on petitioners' allegations contained in Counts II through IV and to report his findings to this court. Based on the testimony presented and the evidence admitted at the hearing, the special master found, *inter alia*, that SSA lacked sufficient valid signatures to qualify the petition for the ballot under Amendment 7. On the issue of certification, the special master found,

> 32. The change in the language of the certification to the Secretary after June 12, 2019 to eliminate the statement that the paid canvassers had "passed" a criminal background check was reviewed and approved by attorney Alex Gray, Exhibit 40, acting on behalf of SSA.

> 33. A total of 8 paid canvassers were certified to the Secretary as having passed a criminal-record check before beginning to collect signatures. Those seven [sic] paid canvassers are: Jay Taylor, Lee Evans, Nicholas Kowalski, Debra McLain, Richard Riscol, Charmaine Vossberg, Jerime Willour, and Daryl Oberg.

> 34. These 8 paid canvassers collected a total of 12,116 signatures that the Secretary counted as valid.

> 35. After subtracting the valid signatures obtained by those 8 paid canvassers, the remaining total number of signatures the Secretary counted as valid, 51,911, were procured by paid canvassers not certified as having passed a criminal record search upon submission of the paid canvasser list from June 13, 2019 and afterward. This violation triggers the "do not count" requirement of Ark. Code Ann. § 7-601(b)(5) [sic], which provides that "signatures incorrectly obtained under this section shall not be counted by the secretary of State" and therefore requires disqualification of 51,911 signatures from the 64,027 that the Secretary counted as valid. The term "shall" has been determined to be mandatory and that substantial compliance cannot be used as a substitute for

4

fulfillment with the statute. *Benca v. Martin*, 2016 Ark. 359, at 12–13, 500 S.W.3d at 750; *Zook v. Martin*, 2018 Ark. 306.

(Transcript references omitted.)

The special master concluded,

132. Based on the foregoing findings, I find that the Respondent, Secretary of State[,] erroneously included 51,911 total signatures in its verified and final count. Therefore, after deducting the 51,911 invalid signatures from the Secretary of State report of 64,027 valid signatures, the remaining 12,116 valid signatures does not satisfy the 54,391 valid signature requirement. Accordingly, I find that the Sponsor, Safe Surgery Arkansas, submitted insufficient signatures to qualify for the November 3, 2020 General Election Ballot. I also find that all other claims made by the Petitioner, Arkansas for Healthy Eyes, should be denied for lack of proof.

The special master also denied petitioners' allegations of fraud.

II. *Analysis*

A. Paid-Canvasser Registration

Petitioners first contend that the special master correctly found that SSA did not register its paid canvassers as required by law. Specifically, they assert that the Secretary erroneously included 51,911 signatures as valid because "[f]rom June 13 forward, every time [SSA] registered paid canvassers with the Secretary, SSA made no certification that any paid canvasser had passed any criminal background check."

Under our well-established standard of review, we will accept the special master's findings of fact unless they are clearly erroneous. *See Roberts v. Priest*, 334 Ark. 503, 975 S.W.2d 850 (1998). A finding of fact is clearly erroneous, even if there is evidence to support it, when, based on the entire evidence, the court is left with the definite and firm conviction that the master has made a mistake. *See id.*, 975 S.W.2d 850.

5

Article 5, section 1 of the Arkansas Constitution, incorporating Amendment 7, governs both statewide and local initiatives and referendums. *See* Ark. Const. art. 5, § 1, *amended by* Ark. Const. amend. 7; *Mays v. Cole*, 374 Ark. 532, 289 S.W.3d 1 (2008). Jurisdiction to review the sufficiency of statewide initiative petitions is conferred upon this court by way of Amendment 7 to the Arkansas Constitution. *See Ward v. Priest*, 350 Ark. 345, 86 S.W.3d 884 (2002). Amendment 7 states that "[t]he sufficiency of all state-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." Ark. Const. art. 5, § 1. Following certification by the Secretary of State, Amendment 7 clearly confers original and exclusive jurisdiction upon this court to review the Secretary of State's decision as to the sufficiency of the petition. *See Ward*, 350 Ark. 345, 86 S.W.3d 884; *see also Stephens v. Martin*, 2014 Ark. 442, 491 S.W.3d 451.

The applicable statute, Arkansas Code Annotated section 7-9-601(b) (Repl. 2018), delineates the background check that a sponsor must obtain before a paid canvasser collects signatures:

> (b)(1) To verify that there are no criminal offenses on record, a sponsor *shall obtain*, at its cost, from the Department of Arkansas State Police, a current state and federal criminal record search on every paid canvasser to be registered with the Secretary of State.

> (2) The criminal record search shall be obtained within thirty (30) days before the date that the paid canvasser begins collecting signatures.

> (3) Upon submission of its list of paid canvassers to the Secretary of State, *the sponsor shall certify to the Secretary of State that each paid canvasser in its employ has passed a criminal background check in accordance with this section.*

. . . .

      (5) Signatures incorrectly obtained or submitted under this section shall not be counted by the Secretary of State.

Ark. Code Ann. § 7-9-601(b)(1)–(3), (5) (emphasis added).

This court reviews issues of statutory interpretation de novo because it is for this court to determine the meaning of a statute. *Swenson v. Kane*, 2014 Ark. 444, 447 S.W.3d 118. The first rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Berryhill v. Synatzske*, 2014 Ark. 169, 432 S.W.3d 637. When a statute is clear, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002).

The plain language of Arkansas Code Annotated section 7-9-601 provides that the sponsor "*shall obtain*" a current state and federal criminal record search and that the criminal record search "shall be obtained within thirty (30) days before the date that the paid canvasser begins collecting signatures." Ark. Code Ann. § 7-9-601(b)(1), (2) (emphasis added). Additionally, the statute provides that the background check is to be completed before the paid-canvasser list is submitted to the Secretary of State and requires the sponsor to "certify to the Secretary of State that each paid canvasser in its employ *has passed* a criminal background check in accordance with this section." Ark. Code Ann. § 7-9-601(b)(3) (emphasis added). The statute also provides that "[s]ignatures incorrectly obtained or submitted under this section shall not be counted by the Secretary of State." Ark. Code Ann. § 7-9-601(b)(5).

7

Further, when a petitioner fails to certify that paid canvassers passed a background check, the Secretary of State must refuse to count improperly obtained signatures because of that failure. *See* Ark. Code Ann. § 7-9-126(b) (Repl. 2018) (providing that such signatures "shall not be counted for any purpose"). This court has required strict compliance with subsection (b)'s do-not-count provision. *See Zook v. Martin*, 2018 Ark. 306, at 4–5, 558 S.W.3d 385, 390; *Benca v. Martin*, 2016 Ark. 359, at 10–13, 500 S.W.3d 742, 749–50.

Recently, in *Miller v. Thurston*, 2020 Ark. 267, ___ S.W.3d ___, Miller argued to this court that the certification language, when viewed as a whole, certified that their paid canvassers had passed criminal background checks and that the Secretary violated Arkansas law in declaring the petitions insufficient for failure to comply with the statutory requirements of section 7-9-601. In construing section 7-9-601, we stated that

> [u]nder Arkansas Code Annotated section 7-9-601, a sponsor is required both to *obtain* a criminal record search on each paid canvasser and to certify to the Secretary of State that each paid canvasser *passed* the criminal background check. Simply acquiring or obtaining a background check is not sufficient under the plain language of the statute.
>
> . . . .
>
> [W]e cannot ignore the mandatory statutory language requiring certification that the paid canvassers passed criminal background checks, nor can we disregard section 7-9-601(f)'s prohibition on the Secretary of State counting incorrectly obtained signatures "for any purpose."

*Miller*, 2020 Ark. 267, at 3–4. We concluded that a criminal background check must be both "obtain[ed]," pursuant to section 7-9-601(b)(1), and "passed," pursuant to section 7-9-601(b)(3). In *Miller*, we held as a matter of law that the petitioners did not comply with section 7-9-601(b)(3) when they failed to certify that their paid canvassers had passed criminal background

checks, that the initiative petitions were insufficient, and that the petitioners were not entitled to a cure period. *Miller*, 2020 Ark. 267, at 4, ___ S.W.3d at ___.

In the case at bar, *Miller* controls. Here, the June 13, 2019 certification language of SSA, under which 51,911 signatures were counted by the Secretary as valid, failed to certify that the paid canvassers had "passed" a criminal background check in accordance with section 7-9-601(b)(3). Thus, under a strict-compliance analysis, we hold that SSA's petition was insufficient because it did not comply with section 7-9-601(b)(3) when it failed to certify that its paid canvassers had passed criminal background checks. Accordingly, we grant the original-action petition in part on this issue.

### B. Remaining Challenges

We have consistently held that we will not review issues that are moot because to do so would be to render an advisory opinion. *See, e.g., Lott v. Langley*, 2013 Ark. 247; *Watts v. Searcy Cty. Bd. of Elections*, 364 Ark. 452, 220 S.W.3d 642 (2005). Because we grant the petition in part based on SSA's failure to certify that its paid canvassers had passed background checks, petitioners cannot proceed with their remaining challenges to the initiative process, and any ruling on petitioners' remaining claims would be strictly advisory.

Petition granted in part and dismissed as moot in part.

Mandate to issue immediately.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent for the reasons stated in my dissent in *Miller v. Thurston*, 2020 Ark. 267, ___ S.W.3d ___ (Hart, J., dissenting).

9

*Kutak Rock LLP*, by: *Jess Askew III*, *Frederick H. Davis*, and *McKenzie L. Raub* (Little Rock); and *Dale W. Brown* (Fayetteville), for petitioners Arkansans for Healthy Eyes and Vicki Farmer.

*Gary L. Sullivan*, Managing Attorney, Arkansas Secretary of State's Office, for respondent.

*Steel, Wright, Gray, PLLC*, by: *Ryan Owsley*, *Nate Steel*, and *Alex T. Gray*, for intervenors.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, amici curiae for League of Women Voters of Arkansas and Arkansas Voters First.